(June 26, 1908.)

JOHN CRONAN, Plaintiff, v. DISTRICT COURT, FIRST JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR KOOTENAI COUNTY, and WILLIAM W. WOODS, as Judge of Said Court, Defendants.

[96 Pac. 768.]

APPOINTMENT OF RECEIVER—JURISDICTION—INTERESTED PARTY—APPEAL.
—PLAIN, SPEEDY AND ADEQUATE REMEDY—SERVICE OF AFFIDAVIT
AND NOTICE—WRIT OF REVIEW—PROHIBITION—FACTS ALLEGED IN
COMPLAINT—IMMINENT DANGER OF INSOLVENCY—JURISDICTIONAL
FACT—RECEIVER—COLLECTION OF DEBT—MANAGEMENT OF PRIVATE
CORPORATION—GOING CONCERN—DELAY CREDITORS—PRIVATE COR-
PORATIONS—DUTY TO PUBLIC—PRESERVE ASSETS.

1. A party seeking relief by writ of prohibition need not necessarily be named as a party in the original action.  He may make

himself a party by showing that he has an interest in the controversy and by moving to set aside a judgment or order made without or in excess of jurisdiction, and if his motion is denied and an appeal would not be a plain, speedy and adequate remedy, he may have the writ of prohibition issued to protect his rights.

2. Under the provisions of rule 67 of the rules of this court, the service of a copy of the affidavit and a notice of the time of hearing the application for a writ of prohibition must be made on the parties in interest. The service in this case held sufficient.

3. Sec. 4995, Rev. Stat., declares that the writ of prohibition is a counterpart of the writ of mandate; *held*, that the same degree of strictness in regard to parties is not maintained in prohibition as in mandate.

4. Under the provisions of sec. 4995, Rev. Stat., a writ of prohibition will be issued upon proper complaint or petition to arrest proceedings which are without or in excess of the jurisdiction of such tribunal, corporation, board or person, in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law.

5. *Held*, under the facts of this case, if an appeal is authorized, it would not be a plain, speedy and adequate remedy in the ordinary course of law.

6. Under the provisions of subdivision 5, sec. 4392, Rev. Stat., a court or judge has no jurisdiction to appoint a receiver, unless it appears from the application that the corporation has been dissolved or is insolvent or is in imminent danger of insolvency or has forfeited its corporate rights; and where the ground alleged is "imminent danger of insolvency," facts must be alleged sufficient to show such imminent danger.

7. When it is shown by the complaint that a corporation has unencumbered assets, all of which are reasonably worth more than one million dollars over and above the indebtedness of the corporation; *Held*, that such facts do not show that the corporation is in imminent danger of insolvency, and the judge or court has no jurisdiction to appoint a receiver on such a showing.

8. "Imminent danger of insolvency" is a jurisdictional fact, and must be made to appear before a court has jurisdiction to appoint a receiver on that ground.

9. The appointment of a receiver is not justified simply because it is an easy way of collecting a debt, but the creditor must show that he had exhausted his legal remedies and had been unable to collect his debt before a receiver will be appointed to assist him.

10. Under the provisions of sec. 4333, Rev. Stat., prescribing the power of receivers, it was not intended that a court or judge should take charge of the property of a private corporation through its

receiver and operate it as is contemplated by the order of the judge in this case.

11. Where it appears that a receiver is sought to forestall the action of creditors in the collection of their claims and the corporation is solvent, the judge has no jurisdiction to appoint a receiver.

12. A court of equity has no jurisdiction to undertake the management of private corporate business, that is, to carry it on as a "going concern" in order to pay the creditors and save something to the corporation. Its duty is temporary and limited to caring for and the preservation of its property, and not to operate the business as a "going concern," especially when it is apparent that the receivership is for the purpose of delaying creditors.

13. *Held,* under the facts of this case that the judge had no jurisdiction to appoint a receiver and that the peremptory writ of prohibition should issue.

14. Under our statute or law, there is no jurisdiction for the appointment or continuance of a receiver of a private corporation for the purpose of giving it time to raise money to pay its debts.

15. The jurisdiction of the court to appoint a receiver of a private corporation does not exist when the corporation is solvent and a "going concern," and where it is apparent that the appointment of a receiver is to prevent creditors from enforcing their claims by due process of law.

16. A private corporation owes no special duty to the public and its continued operation is not a matter of public concern, and the court in cases of receivers should not go beyond the protection and preservation of its property for its creditors.

17. A court of equity will not appoint a receiver for a private corporation not engaged in public service, and continue the business any further than to preserve its assets and sell the same for the benefit of its creditors.

(Syllabus by the court.)

An original proceeding in this court for a writ of prohibition to prevent the court from further proceeding in conducting the business of a private corporation through a receiver. *Peremptory writ granted.*

Sanders & Flynn, and Lancaster & McGee, for Plaintiff.

The strict and technical rules with respect to parties, which have been shown to apply in most extraordinary remedies, do not apply to a proceeding in prohibition. (Spelling on Injunctions, Prohibitions, etc., 2d ed., secs. 1745, 1746; High on

Receivers, 3d ed., sec. 15; Beach on Receivers, Alderson's ed., p. 194; *Elliott v. Superior Court of San Diego Co.*, 144 Cal. 501, 103 Am. St. Rep. 102, 77 Pac. 1109; *State v. Superior Court*, 4 Wash. 30, 29 Pac. 764; High Ex. Legal Rem., secs. 764, 766, 769, 771a; *State v. Superior Court*, 15 Wash. 668, 55 Am. St. Rep. 907, 47 Pac. 31, 37 L. R. A. 111.)

An appeal which can only be heard nearly six months hence does not afford a plain, speedy and adequate remedy for the plaintiff under the facts existing in the case at bar. Prohibition is the appropriate remedy. (*Havemeyer v. Superior Court*, 84 Cal. 327, 18 Am. St. Rep. 192, 24 Pac. 121, 10 L. R. A. 627; *Stein v. Morrison*, 9 Ida. 426, 75 Pac. 246; *The French Bank*, 53 Cal. 495; *Bateman v. Superior Court*, 54 Cal. 285; *Fischer v. Superior Court*, 110 Cal. 129, 42 Pac. 561; *State v. Eighth Judicial Dist. Court*, 14 Mont. 577, 37 Pac. 969; *State v. Ross*, 122 Mo. 435, 25 S. W. 947, 23 L. R. A. 534; *People v. Weigley*, 155 Ill. 491, 40 N. E. 300; *People ex rel. Port Huron etc. Ry. Co. v. Judge of St. Clair Circuit*, 31 Mich. 456.)

The district court has no jurisdiction at the suit of a simple contract creditor, in which the relief sought is a straight money judgment, to appoint a receiver for the property of the debtor, a private corporation, to manage and operate the property as a going concern, and to authorize the receiver in the management and operation of such corporation to issue receiver's certificates of indebtedness "in payment of any accounts or bills incurred in the operation of the business of such corporation."

The appointment of Fred B. Morrill, the general attorney of the B. R. Lewis Lumber Co., as receiver of that corporation, is void under sec. 4331, Rev. Stat., notwithstanding the collusive attempt to evade the provisions of that section. (Sec. 4329, Rev. Stat.; *Neall v. Hill*, 16 Cal. 145, 76 Am. Dec. 508; *Jones v. Leadville Bank*, 10 Colo. 464, 17 Pac. 272; *Bell v. Wood*, 181 Pa. 175, 37 Atl. 201; *Pairpoint Mfg. Co. v. Philadelphia Watch Co.*, 161 Pa. 22, 28 Atl. 1003; *Etowah Min. Co. v. Wills Valley Min. Co.*, 106 Ala. 492, 17 South. 522; *Davis v. Flagstaff Min. Co.*, 2 Utah, 74; *Baker v. Backus*, 32 Ill. 79, 115; *Mason v. Supreme Court*, 77 Md. 483, 39 Am. St.

Rep. 433, 27 Atl. 171; *Wallace v. Pierce-Wallace Pub. Co.,* 101 Iowa, 313, 63 Am. St. Rep. 389, 70 N. W. 216, 38 L. R. A. 122; *Becker v. Hoke,* 80 Fed. 973, 976, 26 C. C. A. 282; *Tompkins v. Catawba Mills,* 82 Fed. 780; Cook on Corporations, 5th ed., pp. 2372-2376, sec. 863; *Duncan v. Treadwell Co.,* 82 Hun, 376, 31 N. Y. Supp. 340; *In re Philadelphia etc. R. R.,* 14 Phila. 501; *East Tenn. etc. Ry. Co. v. Atlantic etc. Ry. Co.,* 49 Fed. 608, 15 L. R. A. 109; *Hollis v. Brierfield Coal etc. Co.,* 150 U. S. 371, 14 Sup. Ct. 127, 37 L. ed. 1113; *Parker v. Moore,* 3 Edw. Ch. 235; *Spooner v. Bay St. Louis Syndicate,* 44 Minn. 401, 46 N. W. 848; *Gibbs v. Morgan,* 9 Ida. 100, 72 Pac. 733; *Kelley v. Steele,* 9 Ida. 141, 72 Pac. 887; *Security Sav. & Trust Co. v. Piper, Judge,* 4 Ida. 463, 40 Pac. 144; *Dalliba v. Winschell,* 11 Ida. 364, 114 Am. St. Rep. 267, 82 Pac. 107; *Hall v. Nieukirk,* 12 Ida. 33, 118 Am. St. Rep. 188, 85 Pac. 485; *Hanna v. State Trust Co.,* 70 Fed. 2, 16 C. C. A. 586, 30 L. R. A. 201; *Raht v. Attrill,* 106 N. Y. 423, 60 Am. St. Rep. 456, 13 N. E. 282; Beach on Receivers, secs. 32-39, 445; *Cortleyeu v. Hathaway,* 3 Stock. 39, 64 Am. Dec. 486, and note; *Cameron v. Groveland Imp. Co.,* 20 Wash. 169, 72 Am. St. Rep. 26, and note, 54 Pac. 1128; *Little Warrior Coal Co. v. Hooper,* 105 Ala. 665, 17 South. 118; and cases cited under last heading *supra.*)

Counsel for the defendants on the oral argument stated that the creditors of the B. R. Lewis Lumber Co. were numbered by the hundred, some of them being creditors for but a few cents on time checks, and to construe rule 28 to require service of the record upon them all would not only be going beyond the reason of the rule, but would impose such an expense and burden upon the plaintiff, Cronan, as to put the remedy of prohibition beyond his reach.

Ezra R. Whitla, for Defendants.

It does not appear from the petition and from the records, files, affidavits and exhibits made a part thereof that the plaintiff is a person beneficially interested, and a party to, or interested in, any action in which the orders of the court complained of were made. (Sec. 4996, Rev. Stat.; *Fleming v.*

*Guthrie, Judge,* 32 W. Va. 1, 25 Am. St. Rep. 792, 9 S. E. 23, 3 L. R. A. 53; *Ex parte Cutting,* 94 U. S. 14, 24 L. ed. 49; *Ex Parte Flippin,* 94 U. S. 348, 24 L. ed. 194; *Ex parte Humes,* 149 U. S. 192, 13 Sup. Ct. 836, 37 L. ed. 698; *Garrison v. Webb,* 107 Ala. 499, 18 South. 297.)

Such a motion as Cronan's could not be sustained, and was properly overruled and denied. (*Enos v. New York & O. R. Co.,* 103 Fed. 47; *Wooding v. Wooding Co.,* 10 Wash. 531, 39 Pac. 137; *Grand Trunk Ry. Co. v. Central Vermont Ry. Co.,* 85 Fed. 87.)

The petition and records show that the plaintiff has a plain, speedy and adequate remedy in the ordinary course of law. (Sec. 4995, Rev. Stat.)

The plaintiff herein has a right of appeal from the decision of the court denying his motion to revoke the order made on April 11, 1908, appointing said Morrill receiver. (Sec. 9, art. 5, Const. Ida.; *Chemung Min. Co. v. Hanley,* 11 Ida. 302, 81 Pac. 619.)

The right of appeal is "a plain, speedy and adequate remedy in the ordinary course of law." (*White v. Superior Court,* 110 Cal. 54, 42 Pac. 471; *Agassiz v. Superior Court,* 90 Cal. 101, 27 Pac. 49; *Strouse v. Police Court,* 85 Cal. 49, 24 Pac. 747; *State v. Cory, Judge,* 35 Minn. 178, 28 N. W. 217; *State v. Municipal Court,* 26 Minn. 162, 2 N. W. 166; *State v. District Court,* 26 Minn. 233, 2 N. W. 698; *Grant v. Superior Court,* 106 Cal. 324, 39 Pac. 604; High on Extr. Rem., par. 770.)

Prohibition will not lie at the instance of a creditor who desires to attach property which has been taken charge of by a receiver, even though the order appointing the receiver be void. (*State v. Superior Court,* 7 Wash. 77, 34 Pac. 430.)

Under subdiv. 5, sec. 4329, Rev. Stat., the court had full and complete jurisdiction to make said order. (*Hall v. Nieukirk,* 12 Ida. 33, 118 Am. St. Rep. 188, 85 Pac. 485; *Gibbs v. Morgan,* 9 Ida. 100, 72 Pac. 733; *Security Sav. & Trust Co. v. Piper, Judge,* 4 Ida. 463, 40 Pac. 144; *San Antonio & G. S. Ry. Co. v. Davis,* (Tex. Civ. App.), 30 S. W. 693; *Byrne v. First Nat. Bank,* 20 Tex. Civ. App. 194, 49 S. W. 707; *Nun-*

*nally v. Strauss,* 94 Va. 255, 26 S. E. 580; *Supreme Sitting of Order of Iron Hall v. Baker,* 134 Ind. 293, 33 N. E. 1128, 20 L. R. A. 210; *Con. Tank Line Co. v. Kansas City Varnish Co.,* 43 Fed. 204; *Enos v. New York & O. R. Co.,* 103 Fed. 47; *Doe v. Northwest Coal & Trans. Co.,* 64 Fed. 928; *Barbour v. National Exchange Bank,* 45 Ohio St. 133, 12 N. E. 5; *Grand Trunk Ry. Co. v. Cent. Vt. Ry. Co.,* 85 Fed. 87.)

In making the order the court and judge exercised a judicial discretion which cannot be questioned, modified or interfered with, through either a writ of prohibition or writ of mandate. (*Connolly v. Woods, Judge,* 13 Ida. 591, 92 Pac. 573; *Elwood v. First Nat. Bank,* 41 Kan. 475, 21 Pac. 673; *Re Lewis,* 52 Kan. 660, 35 Pac. 287; Bispham's Principles of Eq., par. 578; *Sage v. Memphis etc. Ry. Co.,* 125 U. S. 361, 8 Sup. Ct. 887, 21 L. ed. 694; *Mellen v. Moline Iron Works,* 131 U. S. 352, 9 Sup. Ct. 781, 33 L. ed. 178; *Brown v. Lake Superior Iron Co.,* 134 U. S. 530, 10 Sup. Ct. 604, 33 L. ed. 1021; *State v. Circuit Court,* 98 Wis. 143, 73 N. W. 788; High on Ex. Rem., sec. 772.)

Plaintiff has failed to comply with par. 5 of rule 28 of the rules of this court in the matter of service of certified copies of the affidavit, etc. If the plaintiff, as a creditor, is a party in interest, as he claims to be, the creditors named are also parties in interest and must be served under said rule. (*Connolly v. Woods, Judge, supra.*)

The court had the power to authorize the use of receiver's certificates and to continue under the receivership the operations of the manufacturing plant and logging operations. (*Cake v. Mohun,* 164 U. S. 311, 17 Sup. Ct. 100, 41 L. ed. 447; *American Pig Iron etc. Co. v. German,* 126 Ala. 194, 85 Am. St. Rep. 21, 28 South. 603; *Union Trust Co. v. Ill. Midland Ry. Co.,* 117 U. S. 434, 6 Sup. Ct. 809, 29 L. ed. 963; *Blythe v. Gibbons,* 141 Ind. 332, 35 N. E. 557; *Grainger v. Old Kentucky Paper Co.,* 105 Ky. 683, 49 S. W. 477; *Ellis v. Vernon Ice etc. Co.,* 86 Tex. 109, 23 S. W. 858; *Knickerbocker v. McKindley Coal etc. Co.,* 172 Ill. 535, 64 Am. St. Rep. 65, 50 N. E. 330.)

SULLIVAN, J.—This is an original application to this court for a writ of prohibition to the judge of the district court of the first judicial district in and for the county of Kootenai, and to said district court, commanding said judge and court to desist and refrain from further proceedings under an order made by the judge of said court on April 11, 1908, appointing Fred B. Morrill receiver of the B. R. Lewis Lumber Company, a corporation, and of the assets, effects and property of said corporation, and adjudging said order to be void, and for such other and further relief as this court may see proper to grant. This application is based on the petition of the plaintiff for the writ and upon the record and proceedings in that certain action of the *Exchange National Bank of Coeur d'Alene, Idaho, a Corporation, v. B. R. Lewis Lumber Co., a Corporation,* including all motions, papers, affidavits, testimony, files, pleadings and documents in said action, and on which the order appointing said receiver was made; and all papers and documents on which the order of May 9, 1908, denying plaintiff Cronan's motion to vacate and set aside said order of April 11th, was made; and on which the order of May 4th denying the motion of the said Exchange National Bank to strike from the files and dismiss the motion of said Cronan, together with the affidavits supporting the same was made; all of said papers and documents being attached to and made a part of the petition.

We will hereafter refer to the Exchange National Bank of Coeur d'Alene as the Exchange Bank, and to the B. R. Lewis Lumber Co. as the Lumber Company.

The Lumber Company is a foreign corporation organized under the laws of the State of Washington, and engaged in the logging and lumber business at Coeur d'Alene City, Idaho, at which place its large lumber manufacturing plant is situated, and many of its tangible assets. On April 11, 1908, the Exchange Bank commenced an action in the district court of Kootenai county against said Lumber Company, on four promissory notes and an account stated, in which it sought to recover a money judgment for $61,462.58, with interest and attorneys' fees. On May 7, 1908, judgment was entered in that

action in favor of the Exchange Bank for the sum of $64,325.-91 and costs amounting to $10. The said judgment included $2,000 attorneys' fees.

It is recited in the judgment that the Lumber Company was regularly served with process and had filed therein its written acknowledgment of service of the summons and complaint, and thereafter failed to appear and answer the complaint within the time allowed by law, or at all, and the default of the defendant was entered, and that on the application of Ezra R. Whitla, Esq., attorney for the Exchange Bank, said judgment was entered. This, it appears, was a straight action at law for the recovery of money alleged to be due upon an account stated, and certain promissory notes, and the judgment entered against the Lumber Company was for the sum of money above mentioned and $10 costs and nothing more.

So far as the complaint is concerned, the cause of action is stated in four separate counts or causes, three on promissory notes, and one on an account stated. After the statement of the fourth cause of action, it is alleged in the complaint that the Lumber Company is largely indebted in various amounts to different parties, aggregating altogether the sum of $350,-000, and that nearly all of such indebtedness is past due and payable; that the defendant cannot meet its obligations by reason of the fact that it has not sufficient funds on hand for that purpose, and is unable to procure or get the funds necessary to meet its obligations, and that it is a foreign corporation doing business as such in this state, and there is imminent danger of its creditors attaching its assets in unnecessary and vexatious litigation to the injury of the Exchange Bank and other creditors of such corporation; that the defendant corporation is engaged in the manufacture of lumber and other timber products, and has an extensive manufacturing plant located in said Kootenai county, and has a large amount of lumber on hand in its yards at said plant, aggregating, in round figures, at least 20,000,000 of feet, worth at least $300,-000; that in addition thereto, it has on hand logs ready to be converted into lumber, aggregating 8,000,000 of feet, and that said logs can be cheaply converted into lumber and various products at a large profit to said defendant if it is permitted

to continue the operations of its said plant, and that said lumber and timber products and all of the same is and will be available to be converted into cash, and the sale thereof can be readily made if given sufficient time and opportunity so to do; that if the assets and the property of said defendant corporation are protected and its business continued, its available assets will more than amply pay all of its creditors in full, and that it is necessary that said assets be protected for the interests of all of the creditors and in order that they may be paid in full and thereby the interests of all the creditors, as well as of the said lumber corporation will be subserved, and that for said reasons it is absolutely necessary that a receiver be appointed to conduct the business of said corporation, and that unless the same is done, the creditors, as well as the lumber corporation, will incur great loss and irreparable injury; that if the creditors are allowed to proceed against said corporation and attach its assets and property, the same will be wasted and the creditors will be unable to get full payment of the amount due them and great loss will be sustained to the creditors and to the lumber corporation; that the lumber corporation is also engaged in extensive logging operations, and has on hand a large number of horses and logging equipment, and is in every way equipped for large logging operations, which must be protected and kept intact in the interest of the creditors and the lumber corporation, and that said lumber corporation owns large tracts of land and timber land in said county of Kootenai which is necessary to be looked after and protected from forest fires and other causes during the dry season, all of which cannot be done unless a receiver is appointed to take charge of and look after the same; and that the lumber company also has in the city of Coeur D'Alene a retail lumber-yard and offices, from which they retail its lumber and forest products at a large profit, and also has in the city of Spokane, Washington, a retail lumber-yard and offices through which it sells at large profit its lumber and timber products; that the assets of said lumber corporation have a fair market value, if given time and opportunity to sell and dispose of the same, of more than a million dollars

194        CRONAN *v.* DISTRICT COURT.        [15 Idaho,

over and above its liabilities; that a receiver having the charge, control and supervision of the assets and property of said lumber company, under the direct order and control of the court, will within a reasonable time, by the continuing of the business and the operation of its manufacturing plant, be able to pay all of the debts of said lumber corporation and leave large assets clear of all debt, liens and encumbrances.

The prayer of the complaint then follows, asking a money judgment, and for the appointment of a receiver to take charge of, handle and control all of the assets and property, real, personal and mixed, and to collect all moneys due the corporation and pay the creditors, and do and perform such other and necessary duties as may devolve upon a receiver.

On April 11, 1908, the judge made an order appointing a receiver to take charge of the property and effects of the lumber company, and to continue its business, which order was filed by the clerk of said court on April 13, 1908. In that order the judge recites that the verified complaint of the Exchange Bank in the case of said bank against the B. R. Lewis Lumber Co., having been filed in his court, whereby it is made to appear that the lumber company is indebted to said Exchange Bank in the sum of $61,462.58, with interest thereon, and that it further appears from said complaint that the defendant is largely indebted in various amounts to different parties, aggregating a sum of $350,000, and that all of said indebtedness is past due and payable, and that the lumber company cannot meet its obligations by reason of the fact that it has not sufficient funds, reciting many of the allegations contained in the complaint and above set forth in this opinion, which will not be repeated here, and reciting that if a receiver is not appointed, the creditors of such corporation, by attachment process, will prevent the continuing of said operation of said manufacturing plant and the handling of the lumber company's assets, and the converting of the same into money and the payment of its creditors, and that a large loss will be sustained by said lumber corporation.

The order also recites the fact that the parties interested in that action had filed their written consent to the appointment of Fred B. Morrill as the receiver of said lumber corporation, to take charge of all its assets and property, both real, personal and mixed, to carry out the orders of the court. It appears that said Morrill was one of the attorneys for the lumber corporation, and a nonresident of the state, and that it was necessary for the parties interested, under the provisions of sec. 4331, Rev. Stat., to file their written consent to his appointment as receiver before the court or judge could appoint him. The judge, in said order, proceeds in detail, among other matters, to set forth the powers and duties of said receiver in the words following, to wit:

"Now, therefore, after due and full consideration of said complaint and all of the records and facts submitted, it is hereby ordered that Fred B. Morrill be, and he hereby is, appointed receiver of said defendant B. R. Lewis Lumber Company, and of all its assets and property, both real, personal and mixed, and is hereby authorized, ordered and directed by this court to take charge of, manage, and control all of the assets and property, both real, personal and mixed of the defendant B. R. Lewis Lumber Company under the direction of, and until the further order of this court herein, and upon the said Fred B. Morrill filing with the clerk of this court a bond in the sum of $50,000 payable to the said defendant, the creditors of said defendant, and all parties in interest, and the taking of his oath as required by law the said B. R. Lewis Lumber Company, its officers, agents, servants, employees, and any and all persons having control or possessing any of its property, either real, personal or mixed are hereby ordered and directed to turn over and give into the charge of the said Fred B. Morrill any and all property which belongs to the said B. R. Lewis Lumber Company both real, personal and mixed which they may have in their possession or under their control; and the said Fred B. Morrill, as receiver of said defendant B. R. Lewis Lumber Company, is hereby authorized and empowered to take any and all such property into his possession and to collect

any and all debts, accounts, and bills receivable, choses in actions and other obligations due and owing to the said defendant B. R. Lewis Lumber Company, and to handle · and dispose of the same under the order of this court, and it is further ordered that the said Fred B. Morrill, as receiver of said defendant B. R. Lewis Lumber Company, is hereby authorized and empowered to employ such agents, help, and assistance as may be necessary to carry out the orders of the court herein, and to pay the same out of any funds that may come into his hands, belonging to said defendant B. R. Lewis Lumber Company, and the said Fred B. Morrill is hereby further authorized and empowered to continue the operation of the manufacturing plant heretofore mentioned, being situated with the lumber manufactured heretofore mentioned, on sections 14 and 15, Township 50 North, Range 4 West, W. B. M.; and said Fred B. Morrill as receiver of said B. R. Lewis Lumber Company is further authorized, empowered and directed to sell and dispose of by the most profitable method the said lumber heretofore mentioned, and also to sell and dispose of by the most profitable method any and all lumber and other timber products mentioned produced from the logs of said B. R. Lewis Lumber Company that have been cut and are available for manufacturing purposes.

· "And it is further ordered, that said Fred B. Morrill is hereby authorized and directed to take charge of, look after and conduct any logging operations that may be necessary in getting out logs from the lands of the B. R. Lewis Lumber Company and to carry out any contracts heretofore entered into by said defendant B. R. Lewis Lumber Company, and to generally conduct and control and look after any and all of the business of the said B. R. Lewis Lumber Company in connection with such logging operations and manufacturing of lumber and other timber products, the selling and disposing thereof and the collecting of moneys therefrom. And it is further ordered that the said · Fred B. Morrill as receiver of said defendant B. R. Lewis Lumber Company is hereby authorized and directed to enter into and to make any contracts necessary for the carrying out and conducting the business of said B. R. Lewis Lumber Co. as herein set

forth and to pay all help, agents and employees necessary thereto and to purchase any necessary supplies for the same, and such payments to be made in the regular course of business and as a preference over any and all other demands against said B. R. Lewis Lumber Company.

"It is further ordered and directed that the said Fred B. Morrill, upon taking possession of the assets and property as herein before directed of the defendants B. R. Lewis Lumber Co., immediately take an inventory of all the assets and property of said defendant corporation and procure a list of all its debts and liabilities, together with the names of all of its creditors and the amounts due to each thereof, and report the same to this court, and that he make such other and further reports as shall be required by this court, and that he do and perform each and every act which may be required of him by this court as such receiver in this action and keep a full and true account thereof and all of his proceedings therein.

"It is further ordered that Fred B. Morrill, as receiver of the defendant corporation, is hereby authorized and empowered to issue Receiver's Certificates bearing interest at a rate not greater than seven per cent per annum, to be used as evidence of all outstanding indebtedness, or in the payment of any accounts or bills incurred in the operation of the business of said corporation, defendant, in the operating of its business, of its manufacturing of lumber and logging or in the purchase of all supplies, or any other necessary expenditures to be incurred by such receiver in and about the business and active operation of the business of said defendant. And the said receiver is hereby authorized and empowered to adopt such measures as he sees fit in regard to the uniform verification of accounts against said defendant.

"Done at Chambers at Wallace, Idaho, this 11th day of April, A. D., 1908.

"WILLIAM W. WOODS,
Judge."

It appears that the receiver filed the bond required by said order in the sum of $50,000, took possession of the assets of said lumber corporation, and was proceeding to carry out the

order of the court, and since that time has been continuing the business as it had theretofore been operated by the lumber company. The record shows that he had sold up to the time of the hearing eighty-four carloads of lumber and had contracts for one hundred and nineteen more carloads.

On April 24th the plaintiff in this proceeding, John Cronan, having theretofore brought his action in said county against the lumber company upon the lumber company's promissory note of $5,000, and procured the issuance of an attachment to be levied upon the lumber company's property to secure said debt, and the sheriff of the county having refused to levy said writ, filed and served his notice of motion and motion for an order setting aside and annulling the order appointing the receiver, based upon the following five grounds: "(1) That the court had no jurisdiction to make said order. (2) That on the facts stated in the complaint the court was not authorized or warranted in making such order. (3) That the action was brought and the appointment of said receiver secured, by a collusion between the Exchange National Bank and the B. R. Lewis Lumber Company for the purpose of hindering and delaying the creditors of the said B. R. Lewis Lumber Company. (4) That said receiver, Fred B. Morrill, was at the time of his appointment, the attorney of the said B. R. Lewis Lumber Company, and a nonresident of the state of Idaho. (5) That said order was in excess of the power of the court, without warrant of law, unauthorized and void."

Said motion was supported by the affidavits of Cronan, J. F. McGee and L. B. Rowland, and was brought on to be heard on April 30, 1908, and was heard upon the records presented by Cronan and the counter-affidavits presented on behalf of the Exchange Bank. At the time said motion was presented for hearing, a counter-motion was heard on behalf of the Exchange Bank, seeking to strike from the files and dismiss the motion of Cronan upon the following grounds: (1) That said proceeding is irregular and unauthorized and the court has no jurisdiction to entertain the same, for the reason (a) that the records and proceedings in the case

show that John Cronan is not a party to the action, (b) that said Cronan had not obtained any order from the court authorizing or permitting him to intervene in this action to commence any proceedings against the receiver; (2) That no order had been made by the court authorizing the filing of a complaint in intervention by Cronan, and that no such complaint had been filed; (3) That the same is without authority of law and does not conform with the laws of the state and the rules of this court. This last mentioned motion was denied by the court, and the motion of said Cronan was made upon its merits, and after consideration by the court was denied, to which ruling and decision said Cronan duly excepted. On May 5, 1908, judgment was entered in favor of the Exchange Bank for $64,325.91.

Upon said record the plaintiff, Cronan, comes into this court and asks for a writ of prohibition, prohibiting the court and judge from further proceeding under the order appointing a receiver and to hold the same absolutely void.

At the outset counsel for defendant contends that the plaintiff in this proceeding has not shown himself to be an interested party, and for that reason cannot maintain this proceeding. There is nothing in that contention. The plaintiff has brought his suit against the lumber company upon its promissory note, and is a creditor of the lumber company, and it is admitted by both the Exchange Bank and the lumber company that the appointment of a receiver was for the benefit and interest of all the creditors, as well as for any ultimate benefit that might result in case the estate was carefully administered to the lumber company. In 2 Spelling on Injunction and Other Extraordinary Relief, 2d ed., sec. 1745, the author discusses the rule in respect to parties in prohibition proceedings, and states that less strictness is required in prohibition than in cases of other extraordinary remedies, such as *certiorari* and *mandamus,* and states that the theory upon which this principle prevailed was that an inferior court proceeding in excess of its jurisdiction was considered to be in contempt of the sovereign, as well as

committing a wrong to the party to the litigation, and in section 1746, that author says:

"But in view of the modern tendency to assimilate proceedings for extraordinary relief to those in ordinary civil actions, and under requirements of practice acts and codes that all civil actions shall be prosecuted in the name of the real party in interest, it is usual to require that the relator, or the plaintiff—where, as in some cases, it has been held the action may be prosecuted in the name of a private party— shall show at least some interest in the subject of litigation in the court against which the remedy is sought. . . . . But it is not usually necessary that the applicant for relief shall be a party to such litigation."

In High on Receivers, 3d ed., sec. 13, it is said: "A receiver *pendente lite* is appointed only for the benefit of such parties to the cause as appear to be entitled to the fund in controversy, and not for the benefit of strangers to the suit. And if the receivership interferes with the rights of a stranger, he may apply to the court to be heard *pro interesse suo,* and his rights will be protected against any inequitable interference therewith by the officer of the court."

Counsel on both sides cites *Elliott v. Superior Court,* 144 Cal. 501, 103 Am. St. Rep. 102, 77 Pac. 1109, as sustaining their positions upon the question under consideration. The court in that case had under consideration a petition for a writ of *certiorari* to review the orders of the superior court. The question of parties is discussed to some extent in that case, and during the discussion of that question the court said:

"This brings us to the alternative proposition of the respondent that, if only parties to the record are allowed to appeal under section 938 of the Code of Civil Procedure, then none but parties to the record can invoke the remedy by *certiorari* under section 1069; for they contend the word 'party' must be construed in the same way in both connections. . . . . He may make himself a party by moving to set aside such judgment or order, and, if his motion is denied may, on appeal from that order, have the proceeding of which he complains

reviewed not only for excess of jurisdiction, but for error. . . . . It is true that in one respect this remedy is less efficacious than that by *certiorari*, for neither the motion nor the appeal stays the enforcement of a void order unless this court, in the exercise of its inherent power, should approve a stay bond. . . . . In case of an order or judgment in excess of jurisdiction, but not appealable, and therefore reviewable only upon *certiorari*, the remedy could be made available to any stranger to the record injuriously affected, by a resort to the same method of moving to set it aside and thereby making himself a party. And this is a practice to be commended and encouraged for its conveniences; for it is to be presumed that, the attention of the court being drawn to its excess of jurisdiction, the order or judgment would be vacated on motion without the trouble and expense of certifying the record to a court of review.''

That case clearly holds that a person may make himself a party by moving to set aside the judgment or order affecting his interests, and in effect sustains the position taken by plaintiff's counsel. Counsel for defendant apparently take two positions that are contradictory to each other on the question under consideration. They contend that the plaintiff is a stranger and interloper in this proceeding to have a receiver appointed, while all through the complaint·in the action of the *Exchange Bank v. The Lumber Company*, and also in the argument of counsel, it is averred and urged that the appointment of the receiver was for the especial interest and benefit of each and every creditor of the lumber company. This latter contention is no doubt correct, as it appears from the record that the plaintiff is a *bona fide* creditor of the lumber company to the extent of $10,000, and has brought his action in the proper court to recover on $5,000 of that indebtedness, and has had an attachment issued, which the sheriff refuses to serve because of the appointment of said receiver. Thus it is made to appear from the record that the plaintiff in this proceeding is interested in the assets of the lumber company to the extent of at least $10,000, and is opposed to having the receiver continue the

business, and desires to proceed and collect his debt under the laws of the state, and does not desire to be obstructed or kept at bay by the receiver. Therefore, to the proceedings to appoint a receiver, he is as much a party in interest to the extent of his claim as the bank itself. So far as the action at law by the bank to collect its claim against the lumber company is concerned, the plaintiff is not a party, but that branch of this action, for the appointment of a receiver, materially and financially interests him and he became a party in interest as soon as he filed his motion to set aside the order appointing the receiver.

Sec. 4994, Rev. Stat., declares that a writ of prohibition is the counterpart of the writ of mandate, and the same degree of strictness in regard to parties is not maintained. (*State v. Superior Court,* 4 Wash. 30, 29 Pac. 764.) In sec. 766, High on Extraordinary Legal Remedies, it is said that where an inferior court has appointed a receiver over a corporation, having no jurisdiction to do so, and the receiver is seeking to obtain the possession and management of the property, and further action of the court being necessary in administering the receivership, prohibition will lie to prevent the further action and to undo the appointment of the receiver. And in sec. 771a the author also lays down the rule that if it is manifest that an appeal from the action of the court would afford an inadequate remedy, the right of appeal does not of itself afford sufficient ground for refusing relief by prohibition; that when a court having jurisdiction of the subject matter has appointed a receiver over property, the title and possession of which are claimed by third parties, and it is manifest that an appeal from the order would afford an inadequate remedy, in such a case, prohibition would lie to restrain the unwarranted jurisdiction assumed by the inferior court.

*State v. Superior Court,* 15 Wash. 668, 55 Am. St. Rep. 907, 47 Pac. 31, 37 L. R. A. 111, is a case in some respects like the one at bar. An original application was made for a writ of prohibition to prohibit the trial court from proceeding under an order appointing a receiver. In that case

the applicant appeared specially by counsel and suggested to the court that the order for a receiver was void and of no effect. The court declined to vacate or modify the order. Counsel thereupon applied to the supreme court and obtained an alternative writ of prohibition. In deciding the case the court says that the provision of the Washington constitution was substantially copied from the constitution of California, and said:

"The supreme court of that state, so far as we have been able to ascertain, has always held that it had the power by prohibition to restrain the superior courts from proceeding in matters over which they have no jurisdiction, as well as to prevent them from proceeding in *excess* of their jurisdiction; and the decisions of that court construing this provision of the constitution are especially entitled to the favorable consideration of this court. . . . . Under that provision and the statute relating to the office of prohibition similar to ours, the supreme court seems never to have hesitated to prohibit the superior courts from proceeding *without, or in excess* of, their jurisdiction. . . . . The last of the above cited cases is particularly instructive as to the question of the purpose and office of the writ of prohibition. Entertaining the same views as to the jurisdiction and power of this court with reference to the remedy of prohibition that are held by the supreme court of California, we have in numerous instances issued the writ where the object sought to be attained was the prevention of unauthorized acts on the part of the superior courts, and the practice of this court in that regard must now be deemed settled."

We think the supreme court of Washington there correctly states the purpose and office of the writ of prohibition, and that it may be issued to stay the action of an inferior tribunal whenever it is made to appear that it is acting without or in excess of its jurisdiction, on the application of any person shown to be interested in the subject of the litigation. It sufficiently appears that plaintiff is an interested party and hence has the right to bring this proceeding.

Counsel for defendants contend that plaintiff has failed to comply with rule 67 of the rules of this court. That rule provides that the affidavit for the writ must disclose the name or names of the real parties in interest or whose interest would be directly affected by the proceedings, and that in such case it shall be the duty of the applicant obtaining the order to serve, or cause to be served, upon such party or parties in interest a certified copy of the affidavit and notice of the time of hearing on such application in the same manner as upon the defendant named in the affidavit. The real contention is that if the plaintiff is a creditor and is a party in interest, all of the creditors are also parties in interest, and should be served under said rule. It appears that the creditors are numbered by the hundreds, some being creditors for but a few cents on time checks, and others for large amounts, and to hold that the plaintiff must search these creditors out and make service on each of them, would not only go beyond the reason of the rule, but would impose such an expense and burden upon the plaintiff as to put the remedy of prohibition beyond his reach. As we understand it, service was made upon the two defendants and upon the receiver of the lumber company. Those parties claimed to be acting for the creditors and also for the lumber company and the receiver, and the lumber company and the Exchange Bank were in favor of sustaining the order appointing the receiver. This was not an amicable proceeding, but has been warmly contested on both sides, and as we view it, the interests of all parties concerned have been thoroughly presented to the court. There is nothing in the contention that all of the creditors under the facts of this case are such interested parties to this proceeding as would require service of the affidavit for the writ and notice upon them. The record shows that all parties who have shown themselves to be interested in the matter have been served, and the record does not disclose the names of all creditors, and it would therefore be impossible to make service on them.

It is next contended that the plaintiff has an adequate remedy by appeal in this matter, and for that reason pro-

hibition will not lie. It is sufficient for us to say here that an appeal would not be an adequate remedy, as the order appointing the receiver was made April 11, 1908, and the next term of the supreme court is held at Lewiston, commencing on October 12, 1908, where the appeal would be heard, thus allowing a period of six months or more to elapse before the appeal could be heard, and during which time all of the property and assets of the lumber corporation would continue in the hands of the receiver and the lumber company kept running as a "going concern," and the creditors would be delayed for that length of time, at least, in the collection of their claims against the lumber company. Upon those facts, an appeal would be entirely inadequate. It was held in *Havemeyer v. Superior Court,* 84 Cal. 327, 18 Am. St. Rep. 192, 24 Pac. 121, 10 L. R. A. 627, that a writ of prohibition may issue though there be a remedy by appeal, if that remedy is not adequate, as where a court without authority to do so appoints a receiver and directs him to take possession of property. The writ of prohibition will issue whenever proper facts are shown for its issuance, even though there be an appeal, if such appeal is not a plain, speedy and adequate remedy in the ordinary course of law, and in the case at bar it clearly appears that the remedy by appeal was not an adequate remedy.

The controlling question in this case is whether the court, in making the order appointing the receiver to keep said corporation running as a "going concern" and doing the various things permitted and required by said order, acted without or in excess of its jurisdiction. Sec. 4995, Rev. Stat., above quoted, provides that the courts therein mentioned, except probate and justices' courts, may issue a writ of prohibition to an inferior tribunal, corporation, board or person in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law, and sec. 4994 provides that the writ of prohibition is the counterpart of the writ of mandate, and that it arrests the proceedings of any tribunal, corporation, board or person when such proceedings are "without or in excess of the jurisdiction of such

tribunal, corporation, board or person." If the court in the appointment of said receiver has kept within its jurisdiction in such appointment, and has not in any matter connected therewith exceeded its jurisdiction, then the order of the court must stand and the alternative writ of prohibition must be quashed. The ground upon which the receiver was appointed is that the lumber corporation was in imminent danger of insolvency. Under the provisions of subdiv. 5, sec. 4329 of the Revised Statutes, it is provided that "A receiver may be appointed by the court in which an action is pending or has passed to judgment, or by the judge thereof; . . . . 5. In the case when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights." Unless it was made to appear that the lumber corporation was in "imminent danger of insolvency," the court or judge had no jurisdiction to appoint a receiver in this case. In order to determine this question, we must review the facts presented by the complaint.

It is alleged in the complaint that the unencumbered assets of the lumber corporation, consisting of a very extensive milling plant, about twenty million feet of lumber, eight million feet of logs ready for the mill, thousands of acres of valuable timber lands, a logging outfit consisting of horses and other paraphernalia connected therewith, are of the value of more than $1,350,000, and the total indebtedness of the lumber company is averred to be about $350,000. It is alleged in the complaint that the assets of the lumber corporation have a fair market value, if given time and opportunity to sell and dispose of the same, aggregating more than a million dollars over and above its liabilities. Under the provisions of said sec. 4329, subdiv. 5, the court had no jurisdiction to appoint a receiver unless it was made to appear by the complaint that the lumber company was in imminent danger of insolvency; and can it be legally held that a corporation with an indebtedness of but $350,000 and unencumbered assets reasonably worth more than a million dollars over and above its indebtedness, is in imminent danger of insolvency? We think not.

Those facts establish the fact of solvency beyond question, rather than imminent danger of insolvency.

Before the court has jurisdiction to appoint a receiver, it must appear by the complaint or petition when such application is based upon the ground of the imminent danger of insolvency, from the facts stated therein that there is "imminent danger of insolvency." The question then arises, under what circumstances a corporation like the lumber company may be termed insolvent. This question is discussed in the case of *Consolidated Tank-Line Co. v. Kansas City Varnish Co.,* 43 Fed. 204, and there the learned judge states that it is difficult for a court to lay down a definition of solvency or insolvency that is applicable to every case, and, after referring to the authorities on that question under the bankrupt law, the court said:

"I would not in this case be disposed to apply the rigor of the rule that obtains in bankruptcy proceedings,—that whenever a business concern is unable to meet its commercial paper as it matures, in the ordinary course of business, it is insolvent. The term must necessarily be construed with reference to the particular facts of the case. Take the case of a farmer who has his farm and stock: He may have a note outstanding, and may be unable to meet it at maturity, and yet he has property, both land and stock, subject to execution, which would be seized and applied to the payment of debts. We would not apply to him the rigors of the commercial law. Then take a corporation like this, a business concern: I think a medium ground is to be taken between the bankrupt law and that in the case of the farmer such as I have presented. A business concern like this, with nothing but its franchise, its capital stock, and the intelligence and business capacity of its board of directors, depends for its very life upon credit. It could hardly run a day without credit. It is buying material, manufacturing and selling it. It must have credit in bank. It must have credit with its vendors,—the parties from whom it buys. I think it would be a very safe rule to say in a case of that character that where it is unable to meet its paper in bank and to

other creditors as it matures, and its assets are in such a condition that they are not available either as security or collateral for the purpose of borrowing, or for the purpose of conversion, and, in addition to that, it is apparent that there would not be sufficient money realized by sale under execution to meet these liabilities, it is practically insolvent.''

We think the rule laid down by the learned judge in that case is the correct rule in cases of this class, and we think it the proper rule in cases of the character of the one at bar, that where it is unable to meet its paper as it matures, and its assets are in such a condition that they are not available either as security or collateral for the purpose of borrowing or for the purpose of conversion, and in addition to that it is apparent that there would not be sufficient money realized by sale under execution to meet these liabilities, it is practically insolvent. Now, if we test the allegations of the complaint with reference to the insolvency of the lumber company by that rule, it is clear that said corporation is not insolvent. It has property that is worth nearly, if not quite, a million and a half dollars, valuable property, consisting of a great lumber manufacturing plant and the ground upon which it stands; 20,000,000 feet of lumber in its yards worth $300,000; thousands of acres of very valuable timber land; 8,000,000 feet of cut logs, also valuable, with no encumbrance whatever on any of this property. Can it be legally held that such a corporation owning so much unencumbered property, with an indebtedness not to exceed one-fourth or one-fifth of its real value, is in imminent danger of becoming insolvent? We think not. And would it be held for a moment, if the lumber company was contending against the appointment of a receiver in this case, that one would be appointed on the showing made in the complaint? It would certainly not. And the rule established should apply the same to a corporation when it is giving its consent to the appointment of a receiver as when it is opposing it.

The complaint resolves itself into a proposition of this kind: A creditor brings his action at law to recover about $64,000 indebtedness against a corporation that has unen-

cumbered property reasonably worth a million and a half dollars, and not owing to exceed $350,000. Could any court justly hold that such a corporation was in imminent danger of insolvency, and appoint a receiver to take charge of its property and keep the corporation running as a "going concern"? We think not. We think it too plain to admit of any discussion whatever that the facts stated in the complaint fall far short of showing that the lumber company is in imminent danger of becoming insolvent.

As the parties to the original proceeding for the appointment of a receiver consented to the appointment, the trial judge no doubt took it for granted that the complaint stated facts sufficient to give him jurisdiction to appoint the receiver; or the court may have applied the rigorous rules of the federal courts in bankruptcy proceedings to the facts of this case, when it held that the lumber company was in imminent danger of insolvency. That rule is that when a business concern is unable to meet its commercial paper as it matures in the ordinary course of business, it is insolvent, which is not the correct rule to be applied to this class of cases. We think the correct rule is stated in the *Consolidated Tank-Line Co. v. Kansas City Varnish Co.,* 43 Fed. 204, as follows:

"I think it would be a very safe rule to say in a case of that character that where it is unable to meet its paper in bank and to other creditors as it matures, and its assets are in such a condition that they are not available either as security or collateral for the purpose of borrowing, or for the purpose of conversion, and, in addition to that it is apparent that there would not be sufficient money realized by sale under execution to meet these liabilities, it is practically insolvent."

Applying that rule to the facts of this case, there is no question but what the lumber corporation was solvent, and it is clear under our law, the court or judge has no jurisdiction whatever to appoint a receiver for a solvent corporation, and it is clear that in appointing such receiver, the judge acted without and in excess of any jurisdiction he

had in the matter, as the facts clearly show the lumber company was solvent, and the application for the receiver fails to set forth any facts showing that it is in imminent danger of insolvency, as was said in *State v. Ross*, 122 Mo. 435, 25 S. W. 947, 23 L. R. A. 534. The petition in that case did not state facts sufficient to give the court jurisdiction to appoint a receiver, and the facts in this case, as set forth in the petition, laid no foundation whatever for the exercise of the jurisdiction of the judge to appoint a receiver on the ground that the lumber company was in imminent danger of insolvency, for no allegations showing those facts are set forth therein. The court in this state, in order to obtain jurisdiction for the appointment of a receiver on the grounds of imminent danger of insolvency, must have facts sufficient presented to show such danger before it has power to exercise the jurisdiction of appointment.

In *Bell v. Wood*, 181 Pa. 175, 37 Atl. 201, the plaintiffs owned the majority of the stock of the corporation, and filed a bill in their own behalf and some others, and sought, among other things, the appointment of a receiver to take charge of the property of the corporation, which corporation was indebted to a considerable amount, but apparently had assets that would liquidate its indebtedness if applied thereto. The court said:

"Under such a situation of affairs as that shown by the testimony in this case and recited above, we scarcely see where the equities of the case require or even permit us to appoint a receiver to take charge of the affairs of the company. There are no scattered assets to be marshaled, no allegation of mismanagement in the conduct of the present business of the company. The purposes of the application and the only effect of granting it would be to hinder and delay the collection of a valid claim, and nowhere do we find any authority warranting the appointing of a receiver where the effect would be such as that mentioned."

And the court further state that they have examined with care the authorities cited and all text-books within their reach upon the subject of the appointment of receivers, and

fail to find a single case that would warrant the appointment of a receiver under the facts of that case. So, in the case at bar, there are no scattered assets and there are no allegations of mismanagement of the business, and as we view the evidence in the case, the effect of appointing a receiver was to hinder and delay the creditors in collecting their just debts. The facts presented in the record fail to show that there is any danger whatever, let alone "imminent danger" of insolvency.

The case of *Pairpoint Mfg. Co. v. Philadelphia O. & W. Co.*, 161 Pa. 17, 28 Atl. 1003, has some resemblance to the case at bar. In that case the complaint alleged "that a sale by the sheriff would cause a sacrifice of the property and a distribution of the proceeds in violation of the rights of the plaintiffs in the bill and other creditors." In deciding that case, the court said:

"The confession of judgment to the appellant being lawful, the only remaining reason presented by the petition for interfering with the writ of execution is that a sale can be more advantageously conducted in the interests of all the creditors by the receivers. This is not a sufficient reason. The appellant is pursuing the regular and orderly course for the collection of a judgment lawfully obtained for a debt admittedly due. This is its right. The interests of other creditors may be affected thereby, but, until it is shown that their rights are violated, no one has a standing to challenge the appellant's right to use the means provided by law for the enforcement of its claim."

In the case of the *Little Warrior Coal Co. v. Hooper*, 105 Ala. 665, 17 South. 118, the plaintiff filed a bill against the coal company and two other defendants who were stockholders of the company, praying for the appointment of a receiver. The receiver was appointed and the appeal was from the order appointing the receiver. It appears that the complainant was a creditor of the corporation as well as a stockholder and director, and there were other creditors whose debts amounted in the aggregate to two thousand or two thousand five hundred dollars. The averments of the

bill, as in the case at bar, show that although the corpora-
tion had no cash on hand, the assets of the corporation far
exceeded its liabilities. It is averred, however, in a general
way, that the affairs of the corporation were mismanaged,
resulting in waste and injury, and that in the end must
result in the total loss of the property. It was not shown
that the creditors could not collect their debts by due process
of law. It does appear, as in this case, that one of the
creditors was apprehensive that the other creditors might
precipitate lawsuits for the collection of their claims. The
bill contained averments to the effect that so pressing had
become the corporation's creditors and so watchful were
they that on the slightest hint they would all precipitate suits
against the corporation, and that to preserve the assets of
such corporation, it is necessary that a receiver be appointed
at once, without delay and without notice, and that judg-
ments have already been obtained against the corporation,
and orator fears and believes that at any moment the sheriff
may levy upon said corporation's property and cause the
dismemberment of its business and plant. The court there
holds that the proper purpose for the appointment of a re-
ceiver is to conserve the assets for the protection and benefit
of creditors and to pay them as soon as possible, and that
it would seem from the averments of the complaint that the
object in that case was to prevent the creditors from col-
lecting their just demands until the court had operated the
mines and stores of the corporation and realized funds from
the business to satisfy the debts, and that in the meantime
the creditors' claims must be delayed and await the experi-
ment of a court of chancery engaging in the mercantile and
mining business, and the action of the trial court in appoint-
ing a receiver was reversed. In the case at bar, the effect
of the appointment of the receiver was to prevent the cred-
itors from collecting their just claims until the court had
operated the sawmill and the entire business of the corpora-
tion in cutting logs in the timber, conveying them to the
mill and manufacturing them into timber products and sell-
ing the same, and the continuation of such business by the

receiver until he realized funds from the business to satisfy the creditors, and in the meantime, of course, the creditors' claims must be delayed until the experiment is tried by the court, through its receiver, of successfully running the business of the corporation. It is a well-recognized rule that courts of equity only in extraordinary cases, and when public and quasi-public corporations are involved, are justified in undertaking to carry on the business of a private corporation not engaged in public service.

In the case of *Smith v. Smith* (Ala.), cited in *Little Warrior Coal Co. v. Hooper,* 105 Ala. 667, 17 South. 118, 119, the court said:

"We take this occasion to mention that it does not belong to the jurisdiction of courts to undertake the management of private or corporate business. When property is in the possession of a court, it must be preserved, and when no public duty is owing as in the case of railroads, this is the extent to which courts are authorized to go. Such management, therefore, should in all cases be temporary and limited to the performance of the duty of preservation."

And the court in the Little Warrior case, at page 667, says in regard to the Smith case: "Many authorities are cited to support the text"; and holds as follows: "The showing for the appointment of a receiver for the protection of complainant's interests as a creditor is wholly insufficient."

*Etowah Mining Co. v. Wills Valley Mining etc. Co.,* 106 Ala. 492, 17 South. 522, was an action for the appointment of a receiver. The receiver was appointed and the appellate court, after stating the facts, said:

"It [the bill] contemplates the continuance of the business apparently for an indefinite time, but instead of being operated by a trustee as provided in the deed of trust, it is to be operated by the court through a receiver. . . . . We know of no principle of law which justifies a court of chancery to take possession of property admitted to be that of a private corporation, whether conveyed to a trustee or not merely for the purpose of running its business indefinitely

through a receiver, to realize an income for the benefit of its creditors until they are paid from this source.''

A well-considered case on this question is that of the *State v. Ross*, 122 Mo. 435, 25 S. W. 947, 23 L. R. A. 534. The petition in that case in some regards is very much like the complaint in the case at bar. The court, after analyzing the petition in that case holds that there was no cause for the appointment of the receiver stated, and found that there was no cause whatever for the appointment of a receiver and said:

''The whole scope of the paper is to inform the judge of the common pleas court in vacation that the railroad company is in debt, in embarrassed circumstances, some of its creditors are about to sue upon its overdue obligations, and to pray the court to take charge of its property and administer it for the benefit of all concerned. In other words, it is simply a petition by a debtor for the appointment of a receiver to manage and carry on its business, so that its creditors cannot enforce their legal rights in the courts of the country, and not a petition stating a cause of action either at law or in equity in which, as incidental thereto, a receiver might be appointed.''

The case at bar is an action at law so far as the recovery of a money judgment by the Exchange Bank against the lumber company is concerned; aside from that, it is simply an application for the appointment of a receiver to manage and carry on the business of the corporation so that its creditors cannot enforce their legal rights in the courts of the state. The application herein for the appointment of a receiver is based on the fact that the lumber corporation is in imminent danger of insolvency, and the facts presented in the complaint fail to show that the lumber corporation is in any danger whatever of insolvency. The court or judge in the case at bar, under the allegations of the complaint, had no jurisdiction whatever to appoint a receiver in this case. That being true, the writ of prohibition is an appropriate one to restrain the exercise of a jurisdiction by a subordinate court over a subject matter when it has no such jurisdiction.

In *People v. Weigley*, 155 Ill. 491, 40 N. E. 300, the ultimate relief sought was the dissolution of a foreign corpora-

tion, a receiver being asked for. That was a case in which the creditors of a corporation attempted to collect their just claims against it by actions at law and the stockholders attempted to delay them by having a receiver appointed. The court said:

"To hold that, under this statute, whenever creditors of a corporation attempt to collect their just claims against it by action at law, stockholders may invoke the jurisdiction of a court of equity to take charge of the company assets, and thus defeat the creditors, because the enforcement of their rights by authorized processes of law would result in embarrassment or loss to the company, would be not only to violate its plain provisions, but to allow it to be used to defeat the very purpose for which it was enacted."

The bill in the case of *Becker v. Hoke,* 80 Fed. 973, somewhat resembles the complaint for the appointment of a receiver in this proceeding, and Judge Caldwell, in his opinion, said:

"We are of the opinion that the bill filed by Hoke in the circuit court of the United States exhibited no ground for the exercise of the equitable jurisdiction of the court, and that the proceedings of that court thereon are without warrant of law. It would be difficult to classify the bill under any known head of equity jurisdiction. It declares no contest concerning property, no dispute of any kind between the parties thereto. It asserts no dereliction in duty by the defendant corporation or its officers, and no ground to warrant the interference of a stockholder for the protection of his rights. There is no dispute to be adjudged, no right to be asserted, no decree prayed. . . . . We know of no better name by which to characterize it than a bill to hinder and delay creditors."

And we must say in this case as Judge Caldwell did in that, that we know of no better name by which to characterize the complaint in this case, so far as the appointment of a receiver is concerned, than a complaint to hinder and delay creditors. The court there held that the bill presented no case for the exercise of equitable jurisdiction, and no warrantable justification for the appointment of a receiver.

In the 5th edition of Cook on Corporations, sec. 863, p. 2372, it is said:

"Where, however, the receivership is obtained merely to delay other creditors, the court will discharge the receiver even though the judgment is a valid one. . . . . Where a stockholder and creditor, at the instigation and with the connivance of the officers and other stockholders, files a bill to keep the corporation a going concern and obtains a receiver for that purpose, another creditor may file a bill to subject the property of the corporation to the payment of his debt, an allegation being made that the first bill was to hinder and defraud creditors."

A court of equity has no power to appoint a receiver at the instance of a simple creditor for the purpose of operating the property until the creditors are paid.

In *Duncan v. Treadwell Co.*, 82 Hun, 376, 31 N. Y. Supp. 340, the court said:

"We are not aware of any statute or law which justifies the continuance of a receivership for the purpose of giving the corporation time to raise money to pay its debts."

And *In re Philadelphia etc. R. R.*, 14 Phila. 501, the circuit court of the United States, said:

"The modern practice prevailing to some extent, elsewhere, of transferring corporate property to the custody of the courts, to be thus held and managed for an indefinite period of years, to suit the convenience of parties, whereby general creditors and stockholders are kept at bay, I regard as a mischievous innovation."

And in *Moran v. Alvas etc. Co.*, N. Y. Law Jour., December, 1891, it is said:

"The power of the court to appoint a receiver to preserve the assets of a corporation, foreign or domestic, it seems to me does not apply where the corporation is a solvent and going concern, and where it is perfectly apparent that the only purpose of the application for the appointment of a receiver is to prevent creditors enforcing their claims by the ordinary and due process of law against such solvent corporation."

And in *East Tenn. etc. Ry. v. Atlanta etc. Ry. Co.*, 49 Fed. 608, 15 L. R. A. 109, the court said:

"Is it competent by a proceeding of that character [the appointment of a receiver] for a portion of the creditors to take charge of litigation involving the entire assets of the company to 'stand off' other creditors, urge the court to delay the relief which the bill apparently seeks, and then invoke the doctrine of comity to defeat an earnest attempt by the creditors to seek relief elsewhere? We think not. To apply the doctrine of comity to such facts would seem unwarrantable." (See, also, *Parker v. Moore*, 3 Edw. Ch. 235.)

In *International Trust Co. v. Decker Bros.*, 152 Fed. 78, 81 C. C. A. 302, 11 L. R. A., N. S., 152, the court had under consideration the authority of the trial court to appoint a receiver, the grounds of such appointment and the power of the court to authorize the issuance of receivers' certificates, and make such certificates paramount liens upon the *corpus* of the property to the displacement of prior contract liens without the consent of the holders thereof, and the court held that neither the practice nor the reasons supporting it apply to corporations engaged in a strictly private business, and in the case of such corporations, the court has not the power to authorize a receiver to incur indebtedness for carrying on such private business and make the same a paramount lien to all others upon the property of such corporation, and that in such cases the power to authorize the issuance of receivers' certificates extends only to the necessary expenditures incident to the administration and preservation of the property, until the business can be wound up and the receivership ended. That is a very instructive case upon those questions, and the learned Judge Wolverton, who delivered the opinion, after quoting from a number of cases, cites with approval the case of *Dalliba v. Winschell*, 11 Ida. 364, 114 Am. St. Rep. 267, 82 Pac. 107. This court in that case, held that a court of equity had no authority to direct its receiver in charge of placer mines to carry on a regular mining business and charge any loss as a lien against the prop-

erty over that of prior recorded mortgages and encumbrances on the same property. The court there said:

"It is clear to us, however, that a court of equity has no authority to place its receiver in charge of such property and operate the same, carrying on a general mining business, and when it turns out to be a loss, as is likely to be the result in such cases, charge the same up as a preferred claim and lien against the property to the prejudice and loss of the holders of prior recorded liens on the same property. (Citing a large number of cases.) . . . . Private corporations owe no duty to the public, and their continued operation is not a matter of public concern. . . . . But for the court to go beyond the protection and preservation of an ordinary placer mine, and assume to enter into mining operations and the running and conducting of a mine, as appears to have been done by the receiver in this case, is outside of the line of duty of courts of equity and of their receivers, and this excessive exercise of jurisdiction becomes dangerous when indebtedness thus incurred supplants prior existing mortgages and obligations upon the property."

The observations made in that decision apply to the facts of this case and the appointment of the receiver. The order in this case places the attorney of the lumber corporation in charge of that great plant, and directs him to conduct logging operations in the woods, drive the logs to the mill, saw the lumber and sell the same, and issue certificates of indebtedness, unlimited as to the amount, to meet the expenses of conducting such operations. We think that order was clearly "without" and "in excess of" the jurisdiction of the court. It seems to us an astounding proposition that a corporation, owing past due indebtedness amounting to only $350,000 and with assets such as are shown in this case, a part being quick assets in the form of manufactured lumber of the value of $300,000, and logs already cut of the value of fifty or sixty thousand dollars, and a large amount of valuable timber lands, all alleged to be worth more than a million dollars over and above its indebtedness, consisting of about $350,000, and while strongly showing and protesting

that it is not insolvent, can, without notice to its creditors, through one of its creditors, apply to the court and obtain an order placing all of its property in the hands and custody of its general attorney as its receiver, and have an order directing him to conduct the entire operations of said corporation, and giving him the authority to sell the products of the mill on credit, leaving the creditors powerless to enforce the collection of their claims, and is, we think, clearly without and in excess of any jurisdiction given by our laws. The record shows that this proceeding is an attempt, under the forms of law, to hinder and delay creditors, rather than to preserve the assets of a corporation that is insolvent for the benefit of its creditors. The record shows that B. R. Lewis is, and always has been, president and general manager of this corporation, and that he has held for a long time more than two-thirds of the issued stock of that company, and is, in fact, the corporation, and has had complete charge of its business and financial management, and has always absolutely dominated the affairs of the corporation. The record fails to show that the lumber corporation is in any danger of insolvency whatever, and does show that it has assets sufficient to pay all of its liabilities and have nearly a million of dollars left after doing so, and that the appointment of the receiver was procured by B. R. Lewis, through the Exchange Bank, for the purpose of hindering, delaying and defrauding creditors, and that the court or judge was without any jurisdiction whatever to make the appointment of said receiver and authorize him to continue the lumber corporation as a "going concern" until the debts of the corporation are paid. The great weight of authority is that a court of equity will not appoint a receiver for a corporation and continue the business of the corporation any further than to preserve the assets of the corporation and sell the same for the benefit of the creditors.

It is said, among other things, in sec. 445 of Alderson's ed. of Beach on Receivers, as follows: "It is a shame and disgrace to our judicial system which countenances the office of the friendly receiver." We know of no case and have not

been cited to any where an order such as the one appointing the receiver in this case and defining his powers goes to the extent to which that order goes, and it was clearly without and in excess of the jurisdiction of the court or judge to make such order.

The order appointing the receiver provides for the continuance of the business, and provides that receiver's certificates may be issued in the payment of certain indebtedness, and that such certificates shall take priority over other claims against the lumber corporation. In this class of cases, the court or judge has no jurisdiction to make such an order, and cannot make such certificates take priority over pre-existing liens without the consent of all the lienholders affected thereby. Upon this question, see *American Trust & Savings Bank v. McGettigan*, 152 Ind. 582, 71 Am. St. Rep. 345, 52 N. E. 793, and· the exhaustive note to said case; *International Trust Co. v. Decker Bros.*, 152 Fed. 78, 81 C. C. A. 302, 11 L. R. A., N. S., 152. Even if the court had jurisdiction to appoint a receiver for the lumber company, which it had not, under the facts alleged, it had no jurisdiction to make the order in regard to said receiver's certificates.

After a most careful consideration of the entire case, we have arrived at the conclusion that the judge acted without and in excess of his jurisdiction in appointing said receiver, and that said order is absolutely void, and the said court and judge are hereby restrained and prohibited from further continuing said receivership; and it is ordered and directed that the court forthwith terminate and discontinue the same. Costs of this proceeding are awarded to the plaintiff, to be taxed against the Exchange National Bank.

Ailshie, C. J., and Stewart, J., concur.