RYAN, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 21—September 14, 1918.*

*Judicial notice: Boundaries of political subdivisions: Intoxicating liquors: Unlawful sale: Evidence as to time: Federal permit: Appeal: Harmless errors.*

1. The courts will take judicial notice of public records of the state defining the boundaries of its various political subdivisions.
2. Although a county map or atlas showing, as part of a village, a platted area adjacent to but outside of its original boundaries is sufficient to raise a question as to the exact boundaries, that question must be determined by the public records; and the courts will take judicial notice that such boundaries have not been changed in the manner provided by statute since the original incorporation of the village.
3. Where complaint was made on December 16th that defendant unlawfully sold liquor on the 14th, evidence that a man living seven miles away went to a village on December 14th and secured from a physician a prescription for a pint of whisky, and that he took the prescription to defendant's drug store in

the village and there secured the whisky, warranted an in-
ference by the jury that the entire transaction took place on
December 14th.

4. Under sub. 2, sec. 1565c, Stats., evidence that at the time in
question the defendant had a permit or special tax stamp
from the federal government authorizing him to engage in
the occupation of selling spirituous or fermented liquors, is
*prima facie* evidence of an unlawful sale at that time.

5. Where, upon the evidence, the jury could have failed to con-
vict the defendant only by wantonly violating their official
oaths, alleged errors in the charge to the jury cannot be held
prejudicial.

ERROR to review a judgment of the county court of La
Fayette county: J. B. SIMPSON, Judge. *Affirmed.*

*Thomas S. Ryan* was convicted in the county court of
La Fayette county for illegally selling liquor in dry terri-
tory, contrary to the provisions of sec. 1565c of the Stat-
utes. The case is brought here for review upon a writ of
error sued out by said *Ryan,* hereinafter called the defend-
ant.

For the plaintiff in error there was a brief by *Fiedler &*
*Fiedler,* attorneys, and *Calvert Spensley,* of counsel, and
oral argument by *T. M. Priestley* and *E. C. Fiedler,* all of
Mineral Point.

For the defendant in error there was a brief by the *At-*
*torney General* and *J. E. Messerschmidt,* assistant attorney
general, and oral argument by *Mr. Messerschmidt.*

The following opinion was filed June 19, 1918:

OWEN, J.    The first contention of the defendant is that
the state failed to prove that the unlawful sale of liquor for
which he was convicted occurred in La Fayette county. The
evidence shows that the sale took place in the village of
Blanchardville, but there was no proof that the village of
Blanchardville was located in La Fayette county. Courts
of this jurisdiction take judicial notice of the location of the
various political subdivisions of the state. In *Huey v. Van*

*Wie,* 23 Wis. 613, judicial notice was taken of the fact that the village of Madison was in Dane county. In *Davis v. State,* 134 Wis. 632, 115 N. W. 150, this court took judicial notice that the city of Waukesha was within the territorial boundaries of the municipal court for the Eastern district of Waukesha county. It necessarily follows that, when the exact boundaries of the various political subdivisions of the state come in question, the court must take judicial notice of such public records of the state as define such boundaries.

An inspection of the records relating to the incorporation of the village of Blanchardville on file in the office of the circuit court for La Fayette county reveals the fact that, as originally incorporated, the entire area included within said village is in La Fayette county. We also take judicial notice of the fact that the boundaries of said village have not been changed in the manner provided by statute since the original incorporation thereof. It appearing, therefore, that no part of the village of Blanchardville is located outside of La Fayette county, and the proof being undisputed that the sale of liquor took place in the village of Blanchardville, we must hold that the venue was competently proved.

Upon the argument attorneys for defendant exhibited to the court a county map or atlas, upon which a small platted area seeming, according to such map, to constitute a portion of the village of Blanchardville, extended into Iowa county. The platting of lands lying outside the limits of, but adjacent to, incorporated villages and cities by enterprising property owners is not infrequent, and while the presentation of the map was sufficient to raise a question as to the exact boundaries of the village of Blanchardville, the question thus raised must be determined by the public records defining the exact boundary lines of said village.

In this connection it is proper to call attention to the provisions of sec. 4618 of the Statutes, which provides that "Offenses committed on the boundary lines of two counties or within one hundred rods of the dividing line between

them may be alleged in the indictment or information to
have been committed in either of them, and may be prose-
cuted and punished in either county." By virtue of this pro-
vision of the statutes, unless the boundaries of the village
of Blanchardville extended more than 100 rods into Iowa
county the proof was sufficient to confer jurisdiction upon
the county court of La Fayette county.

The information charged the defendant with having made
the unlawful sale of liquor on the 14th day of December,
1916. It is contended that no proof was made of the date
on which the liquor was sold. The evidence shows without
dispute or contradiction that Peter Paulson lived in the
town of York, seven miles from the village of Blanchard-
ville; that on the 14th day of December, 1916, he went to
the village of Blanchardville and secured a prescription from
Dr. McDermott for a pint of whisky; that he took the pre-
scription to the defendant's drug store and secured the
liquor from the defendant; that the defendant did not have
in his employ a registered pharmacist nor an assistant reg-
istered pharmacist, and was not authorized to sell liquor for
medicinal purposes in the village of Blanchardville, as pro-
vided in sec. 1548a of the Statutes. Complaint was made
against him for such unlawful sale on the 16th day of De-
cember, 1916. It is the contention of the defendant that the
evidence does not show that, after securing the prescription
from Dr. McDermott on the 14th day of December, 1916,
Paulson did on that day take the same to the defendant's
drug store and secure the whisky. We think the evidence
and the circumstances fully warrant an inference which
might properly be drawn by the jury that the prescription
was "filled" on the day it was written. The suggestion that
a man in quest of liquor, living seven miles from town,
came into town, secured a prescription, put it in his pocket,
took it home, returned to town a day or two later and then
requisitioned the whisky upon the prescription, is not force-
ful. The evidence showing that the prescription was writ-

ten on the 14th day of December, and that it was taken to the drug store of the defendant and there "filled," the inference fairly follows that the entire transaction took place on that day. But independent of these considerations, sub. 2 of sec. 1565c of the Statutes makes the existence or the issuance of any permit or special tax stamp from the United States government, authorizing or permitting any person to engage in the occupation of selling distilled, spirituous, or fermented liquors at the time and place of any alleged violation of the excise law, *prima facie* evidence that such person is vending, selling, dealing or trafficking in or, for the purpose of evading the laws of this state, giving away spirituous, malt, ardent, or intoxicating liquors or drinks, contrary to sec. 1565c. It was shown at the time of the alleged violation that the defendant had a permit or special tax stamp from the United States government permitting him to engage in the occupation of selling, etc., spirituous or fermented liquors. This constitutes a *prima facie* case against the defendant without any further proof.

A reversal is urged because of alleged errors committed by the trial judge in his charge to the jury. We have examined the charge and do not deem the criticisms thereof worthy of discussion. In any event, nothing short of prejudicial error can work a reversal of the judgment, and no such error has been found. Sec. 3072m; *Adams v. State,* 164 Wis. 223, 159 N. W. 726; *Alsheimer v. State,* 165 Wis. 646, 163 N. W. 255. The evidence is undenied that the defendant sold a pint of whisky to Peter Paulson, who paid him seventy-five cents therefor. Only by wanton disregard of their official oaths could the jury have failed to convict him. Even granting criticisms of counsel to be academically correct, which we do not, prejudicial error does not follow.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, without costs, on September 14, 1918.