Argued April 23, affirmed July 16, 1929.

## STATE v. CARL LEHMAN.

(279 Pac. 283.)

For appellant there was a brief over the names of *Messrs. Butler & Jack* and *Messrs. Hare, McAlear & Peters,* with an oral arugument by *Mr. R. Frank Peters.*

For respondent there was a brief over the name of *Mr. E. B. Tongue,* with an oral argument by *Mr. P. L. Patterson.*

BELT J.—Defendant was indicted, tried and convicted in Washington County of having sold intoxicating liquor. A few days before trial it was ascertained that the alleged crime was committed about 900 feet from the boundary line of Washington County and within Clackamas County. At time of arrest the exact location of the boundary line was not known by the officers.

Defendant asserts that the court had no jurisdiction of the crime since, from the undisputed evidence, it was committed, if at all, in Clackamas County.

The State relied upon Section 1385, Or. L., which provides:

"When a crime is committed on or within one mile of the boundary line of two or more counties, or when the boundary line between two or more counties is unknown or uncertain, and it is doubtful in which county such crime was committed, an action therefor may be commenced and tried in either county."

Relative to the question of venue, the court instructed the jury:

" * * that if the defendant possessed and sold intoxicating liquor at any place within one mile of the actual boundary line of Washington County, for the purpose of this criminal prosecution that is within Washington County, Oregon."

The question is presented as to whether this statute violates the following provision of Article I, Section 11, of the Oregon Constitution:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; * * "

No doubt the object of the statute was to relieve the State, in the prosecution of criminal actions, of the embarrassment and difficulty of establishing the *situs* of the crime when committed on or within a short distance of the boundary line between counties. To prevent miscarriage of justice and to aid in the administration of the criminal law, the legislature, in the exercise of its sovereign power, gave concurrent jurisdiction to either of two or more counties where the crime was committed on or within a specified distance from the boundary line. We think the boundaries of a county, for the purpose of criminal

jurisdiction, may be controlled and determined by the legislature. Certainly, there is no constitutional restriction against it. The boundaries of a county for judicial purposes need not necessarily be coextensive with the county boundaries for other purposes. If it was within the power of the legislature to enact this statute, the defendant was to all intents and purposes tried and convicted for a crime committed within Washington County. There was no variance between the allegations of the indictment and the proof.

This question was involved in *Commonwealth* v. *Matthews,* 167 Mass. 173 (45 N. E. 92). The statute of Massachusetts (Public Stats., Chap. 213, § 19) provides:

"An offense committed on the boundary line of two counties, or within one hundred rods of such line, may be alleged to have been committed, and may be prosecuted and punished, in either county."

Commenting upon the statute, the court quoted from *Commonwealth* v. *Costley,* 118 Mass. 1, as follows:

"The manifest intent and effect of this enactment are that the boundary line between two counties, and a strip one hundred rods wide on each side of that line, may be treated, for the purposes of allegation, prosecution and punishment, as being in either county; or, in other words, that each county, for these purposes, may be deemed to extend one hundred rods into the county adjoining."

It must be conceded, however, that the Constitution of Massachusetts is broader in its terms than that of Oregon.

The constitutionality of a similar statute was unsuccessfully attacked in *State* v. *Stewart,* 60 Wis. 587

(19, N. W. 429, 50 Am. Rep. 388). The Constitution of that state secured to the accused the right "to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed * * ." We attach no particular significance to the word "district" (*Armstrong* v. *State,* 41 Cold. (Tenn.) 338), although it must be conceded that the decision from the Wisconsin court stresses the force and effect of such term. Notwithstanding the distinction between that case and the one at bar by reason of the fact that the word "district" is not included in the Constitution of Oregon, the court recognized that "A county may be organized as a county, and yet not organized as such for judicial purposes." In support of *State* v. *Stewart, supra,* see the comparatively recent case of *Ryan* v. *State,* 168 Wis. 14 (168 N. W. 566).

A similar statute was under consideration in *State* v. *Robinson,* 14 Minn. 447. The court, in referring to the constitutional provision, which is the same as that quoted from Wisconsin, said:

"The object of this provision is to protect the defendant against a spirit of oppression and tyranny on the part of our rulers, and against a spirit of violence and vindictiveness on the part of the people; and also to secure the party accused from being dragged to a trial at a distant part of the State, away from his friends, and witnesses, and neighborhood, and thus to be subject to the verdict of mere strangers, who may feel no common sympathy, or who may even cherish· animosities or prejudices against him, as well as the necessity of incurring the most oppressive expenses, or perhaps, even to the inability of procuring the proper witnesses to establish his innocence. 2 Story on Const., secs. 1780–81. The statute in question, we think, defeats none of these objects, and is not in violation of the section

of the constitution relied on by the defendant's counsel. It simply extends the criminal jurisdiction of the district court one hundred rods beyond the territorial limits of the county; to this we have shown there is no constitutional objection, the jurisdiction having existed prior to the commission of the alleged offense. The jury being taken from the body of the county, within its territorial limits, secure to the defendant, substantially, the right guaranteed by the constitution.''

In 16 C. J. it is said:

''While there are some cases to the contrary, the weight of authority is that these statutes do not deprive accused of the constitutional right to a trial by an impartial jury of the county where the offense was committed.''

In Brill's Cyclopedia of Criminal Law, Volume 1, Section 290, it is stated:

''Statutory provisions, giving adjoining counties concurrent jurisdiction over offenses committed on or within a certain distance of the county line, are common, and have been upheld in many of the states, although some courts have held that they violate constitutional provisions giving the accused a right to be tried in the county where the offense is committed, in so far as they permit a prosecution in any other county.''

Authorities contrary to the rule which we have announced may be found in 8 R. C. L., page 99, although some of those cited do not support the text.

■ It is argued that if the legislature can extend the jurisdiction one mile from the boundary line of Washington County, its jurisdiction may be extended twenty or thirty miles. It will be time enough to meet that question when it arises. It is sufficient to say that designation by the legislature of the one-mile strip wherein the criminal jurisdiction of the court

of Washington County was extended is not an unreasonable exercise of legislative discretion.

■ Neither do we think that the jurisdiction of the court necessarily depended upon the uncertainty of the location of the boundary line between the counties. It was necessary for the State to establish beyond a reasonable doubt that the crime was committed in Washington County as charged in the indictment. If the crime was committed 900 feet from the boundary line and the place in the light of the statute is not to be considered as being in Washington County, then it logically follows that the court would have no jurisdiction. If, on the other hand, this one-mile strip, for purposes of determining criminal jurisdiction, is to be considered as a part of Washington County, there can be no violation of defendant's constitutional rights.

We are not unmindful that courts are much in conflict on the question before us. We have deemed it proper, however, to follow those decisions which, in our opinion, tend toward the administration of justice and which do not, like some which have been cited, obstruct it.

The judgment of the lower court is affirmed.

AFFIRMED.

COSHOW, C. J., and BEAN, J., concur.

BROWN, J., absent.