(No. 6900.   October 16, 1941)

STATE, Respondent, v. CHARLES NADLMAN, Appellant.

(118 Pac. (2d) 58)

O. R. Baum, Ben Peterson and Donald R. Good, for Appellant.

Bert H. Miller, Attorney General, J. R. Smead, Leo Breshnahan, Robert M. Kerr, Jr., and M. Casady Taylor, Assistant Attorneys General, for Respondent.

MORGAN, J.—At about the hour of midnight, ending October 8, 1940, in the lobby of the Cottage Hotel, in Blackfoot, Bingham County, a fight occurred between appellant and J. O. Bradford, who was manager of the hotel. As a result of the fight an information was filed against appellant, the charging part of which is:

"The said Charles Nadlman, on or about the 9th day of October, 1940, at the County of Bingham and State of Idaho, and prior to the filing of this information with a certain deadly weapon or instrument which was likely to produce great bodily injury, to-wit, a typewriter weighing approximately thirty pounds, did then and there wilfully, unlawfully and feloniously make an assault in and upon the person of one J. O. Bradford, by then and there throwing said typewriter at said J. O. Bradford and

by striking said J. O. Bradford on the head and face with said typewriter."

A trial was had and the jury found appellant "guilty of the offense of an assault with a deadly weapon as charged in the information." A motion for a new trial was made and was denied. Judgment was made and entered that appellant be punished by imprisonment in the state prison for a term of not less than one year and not more than two years and that he pay a fine of $250 and costs; that the prison term be, and it was commuted to four months in the Bingham County jail. It was adjudged that, on his failure to pay the fine and costs, he be imprisoned in the county jail until they were satisfied, at the rate of one day for each $2.00 thereof, such imprisonment for failure to pay the fine and costs to commence to run at the expiration of the four months imprisonment imposed in the judgment. This appeal is from the judgment and from the order denying a new trial.

Appellant has made but one assignment of error, to-wit:

"The trial court erred in denying and overruling defendant's motion for a new trial for the reasons and upon the grounds assigned in defendant's motion for a new trial."

The first specification in the motion for a new trial is:

"That the Court has erred in the decision of a question of law arising during the course of the trial more particularly in this: That upon the examination of the prosecuting witness, J. O. Bradford, he testified that at all times prior to the altercation growing out of which this prosecution was had, he was on friendly terms with the defendant, and for the purpose of impeachment, and for this purpose only, the defendant sought to elicit from the prosecuting witness on cross-examination whether or not it was true that he had said to Pauline Duspivia that he was going to 'The next time the S of B comes in, I am going to take a Winchester at him—I am going to pull a Winchester on him.' The court erred in not permitting the defendant to cross-examine the complaining witness concerning and with respect to the statement above re-

ferred to for the purpose of impeachment and for that purpose alone, the complaining witness having already testified that prior to the altercation he was on friendly terms with the defendant; and the Court further committed error every place in the cause where the Court refused to permit the defendant to inquire of the complaining witness concerning the threats he had made against Nadlman, such statements having been made to Pauline Duspivia. Such evidence being offered for the purpose of impeaching the prosecuting witness Bradford and also for the purpose of testing the credibility of the prosecuting witness, and, further, to show bias, prejudice and hostility on the part of the prosecuting witness Bradford and against the defendant Nadlman, and the extent and the cause of such bias, prejudice and hostility."

In folio 118 of the transcript this offer of proof, made by counsel for appellant, appears:

Mr. BAUM: "At this time, Your Honor, the defendant offers to prove, subsequent to interrogating the witness on it, as to whether or not on October 6th, Sunday preceding the occurrence, that Bradford said to Pauline Duspivia, at a time when the only persons were present were Mr. Bradford, the witness on the stand, and Pauline Duspivia, at which time Bradford said, 'The next time Nadlman—the next time the "sun-of-a-bitch" comes in I am going to take a Winchester at him—I will pull a Winchester on him.' "

The offer of proof was denied. In folios 120 and 121 the following questions and answers appear:

"Q. Mr. Bradford, on the evening of October 8th, immediately prior to the occurrence that you have related, what was your feeling towards Mr. Nadlman, friendly, or unfriendly?

"A. Friendly, I had no other reason.

"Q. No other reason?

"A. I was friendly."

The denial of the offer of proof was not erroneous because, first, no foundation was laid for the offer, no question having been propounded to the witness, prior to the offer, about a conversation with Pauline Duspivia. Second, the purpose of the offer of proof was to impeach the

witness, Bradford, by showing he had made a statement, in the nature of a threat against appellant, inconsistent with his testimony that, immediately prior to the occurrence of the encounter between them, he, the witness, was friendly to appellant. The record shows the testimony that the witness was friendly to appellant, immediately prior to the encounter, was given after the offer of proof was denied. At the time the offer was made, the witness had not given testimony inconsistent with the proof offered. Idaho Code Annotated, sec. 16-1210 is:

"A witness may also be impeached by evidence, that he has made, at other times, statements inconsistent with his present testimony; but before this can be done, the statements must be related to him, with the circumstances of times, places and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness before any question is put to him concerning them."

In *Boeck v. Boeck*, 29 Ida. 639, 645, 161 Pac. 576, 577, we said:

"The right to impeach a witness and the methods of impeachment are statutory, and if a witness is to be discredited in this manner the statute must be conformed to."

See, also, *State v. Askew*, 32 Ida. 456, 184 Pac. 473; *State v. Cosler*, 39 Ida. 519, 228 Pac. 277.

Appellant complains:

"The trial court erred in permitting the prosecuting attorney to cross-examine the defendant concerning Pauline Duspivia, permitting him to inquire over objection of the defendant if he did not know Pauline Duspivia and if she did not live at the hotel and if she had not moved away from there just prior to the difficulty which resulted in this prosecution."

Over appellant's objection that it was improper cross-examination, he was required to answer. He testified he knew Pauline Duspivia; that she lived in Blackfoot and that she formerly lived in the Cottage Hotel; that at the time he entered the hotel, the night of October 8, or early morning of October 9, 1940, he knew she had been living

there previously. The record further shows the following cross-examination of appellant by the prosecuting attorney:

"Q. You also knew, did you not, Mr. Nadlman, that she had moved from the Cottage Hotel on the Sunday before the happening of this event?"

Mr. BAUM: "Object to as not proper cross-examination."

The COURT: "Objection overruled."

"A. Yes sir."

"Q. Didn't you also know at that time, Mr. Nadlman, that Miss Duspivia had been requested to leave the hotel by Mr. Bradford?"

Mr. BAUM: "We object to that as not proper cross-examination, we would like to be heard on that, it is certainly going far afield."

After argument by counsel, in the absence of the jury, the objection was overruled. The question was read to the witness by the reporter and he answered it "no."

The extent of cross-examination, on collateral and immaterial matters, is largely within the discretion of the trial judge and his rulings thereon will not be disturbed unless prejudice to the party complaining thereof is apparent. *State v. Mox Mox,* 28 Ida. 176, 152 Pac. 802; *State v. McClurg,* 50 Ida. 762, 300 Pac. 898; *State v. Cochrane,* 51 Ida. 521, 6 Pac. (2d) 489; *State v. Fox,* 52 Ida. 474, 16 Pac. (2d) 663. Appellant does not appear to have been in any way prejudiced by his cross-examination, or by the rulings of the court with respect thereto.

Appellant contends the court erred in denying his request for an instruction to the jury to the effect that it might find him guilty of battery. That contention is based on the theory that battery is an included offense in the crime of which he was accused. He was charged with assault with a deadly weapon, being a violation of section 17-1206, which is:

"Every person who commits an assault upon the person of another with a deadly weapon or instrument, or by any means or force likely to produce great bodily injury, is punishable by imprisonment in the state prison not ex-

ceeding two years, or by fine not exceeding $5,000, or by both."

An assault is defined by section 17-1201, as follows:

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."

Section 17-1203 defines battery thus:

"A battery is any wilful and unlawful use of force or violence upon the person of another."

Section 19-2212 provides:

"The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment, or of an attempt to commit the offense."

Appellant contends both assault and battery are included offenses in a charge of assault with a deadly weapon. In this he is mistaken. Assault is necessarily included in a charge of assault with a deadly weapon, because the latter crime cannot be committed without the commission of the former. This is not true of battery. Assault with a deadly weapon may be committed by an unsuccessful attempt, coupled with a present ability, to commit a violent injury on the person of another, by means of a deadly weapon or instrument, or by any means or force likely to produce great bodily injury. Therefore, battery is not *necessarily* included in a charge of assault with with a deadly weapon, and the court did not err in refusing to give the requested instruction.

While it was not necessary to do so, in order to charge assault with a deadly weapon, the prosecuting attorney included in the information language which describes battery. With respect to an information, in which that was done, we said in *State v. Patterson*, 60 Ida. 67, 72, 88 Pac. (2d) 493, 495:

"Although the language of the charging part of the information is sufficient to describe both assault with a deadly weapon and battery, it is not duplicitous. The clear purpose and intent of the prosecuting attorney to accuse appellant of but one crime, to-wit, assault with a deadly weapon, appears in the information, and amounts

to an election to proceed against him for that crime alone."

A ground appearing in appellant's motion for a new trial is that one of the jurors was disqualified to perform his duties as such. In support of this contention, set out in his motion, appellant submitted affidavits to the effect that the juror was, at the time of the trial, a resident of and an elector in Bannock county, Idaho. The crime is alleged to have been committed in Bingham County and the trial took place there. The affidavits further show that neither appellant nor his counsel knew the juror was a non-resident of Bingham County at the time of the trial; that on his *voir dire* examination he stated, in effect, that he was a resident of Bingham County. The *voir dire* examination does not appear in the record.

There is diversity of judicial opinion as to whether the qualifications of jurors to act as such, in criminal cases, can be inquired into on motion for a new trial.

Section 19-2307 of our code contains this provision:

"When a verdict has been rendered against the defendant the court may, upon his application, grant a new trial in the following cases only:

\* \* \*

"3. When the jury has separated without leave the court after retiring to deliberate upon their verdict, or been guilty of any misconduct by which a fair and due consideration of the case has been prevented. \* \* \* "

If that section provides for granting a new trial in this case, that provision is contained in the above quoted portion, for no other part of it has any bearing on the contention here under consideration.

Subdivision 3 of the section, above quoted, seems to relate to misconduct of the jury after retiring to deliberate on its verdict rather than to misconduct of a venireman, who does not possess the qualifications of a juror, whereby he has deceived the parties litigant into accepting him for jury duty.

However this may be, appellant is not dependent on that section of the statute alone for relief from the im-

position which has been practiced on him. Article I, § 7 of the Constitution of Idaho provides, "The right of trial by jury shall remain inviolate; * * * " In harmony with that provision are sections 2-201 and 2-202 of our code. Section 2-201 prescribes the qualifications of a juror and among them are that he must be a citizen of the United States and an elector of the county. Section 2-202 says: "A person is not competent to act as a juror: 1. Who does not possess the qualifications prescribed by the preceding section."

The venireman in question did not possess the constitutional and statutory qualifications of a Bingham County juror. The right to trial by jury, guaranteed by Article I, § 7 of our constitution, is the right as it was known in Idaho Territory at the time our state constitution was written and adopted. *Christensen v. Hollingsworth,* 6 Ida. 87, 53 Pac. 211; *Shields v. Johnson,* 10 Ida. 476, 79 Pac. 391; *People v. Burnham,* 35 Ida. 522, 207 Pac. 589; *State v. Miles,* 43 Ida. 46, 248 Pac. 442; *Craig v. Lane,* 60 Ida. 178, 89 Pac. (2d) 1008.

A question resembling the one now before us was presented to this court in *State v. Roberts,* 33 Ida. 30, 188 Pac. 895, wherein we directed that a judgment of conviction be set aside and an indictment quashed because one of the jurors who served on the grand jury when the indictment was found was not a person whose name appeared on the jury list, but who had the same surname as a juror whose name did appear on the list and was drawn for jury duty and not summoned.

Appellant's right to trial by jury is the right which is guaranteed to the American people by the Sixth Amendment to the Constitution of the United States, which was in force in Idaho Territory when our state came into existence, and is the right which Article I, § 7 of our constitution says, "shall remain inviolate." The federal constitutional provision which was thus adopted into the Constitution of Idaho is:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall

have been committed, which district shall have been previously ascertained by law, * * * "

Appellant is entitled to a trial by a fair and impartial jury composed of members, each of whom is a citizen of the United States and an elector of Bingham County. This he has not had.

█ It will not do to say that the citizen of the United States who is an elector of Bannock County was in all respects as fair to appellant as any Bingham County juror could have been, and that he suffered no disadvantage by reason of having a Bannock County elector on the jury. Idaho Constitution, Article I, § 13, contains this provision:

"No person shall * * * be deprived of life, liberty or property without due process of law."

A defendant in a criminal case has not had due process of law when he has been tried and convicted by a jury which did not measure up to the constitutional and statutory requirements.

The judgment is reversed and the cause is remanded for a new trial.

Budge, C.J., concurs, and Holden, J., concurs in the conclusion reached.

GIVENS, J.—I concur in the conclusion reached herein because of what I consider to be prejudicial error in the contrary rulings of the trial court in the cross-examination of the complaining witness and the defendant.

AILSHIE, J., (concurring in the conclusion reached)— At the time of the adoption of the constitution, the practice and procedure of the territory was embodied in the 1887 Revised Statutes. Sec. 19-2307, I. C. A., is an exact copy of sec. 7952 of the 1887 Rev. Stat. It provided that the court may "grant a new trial in the following cases *only*." (Italics supplied.) The constitution provided (Art. 1, sec. 7) that the right of trial by jury "shall remain inviolate." Under the decisions of this court, construing that provision, it was meant "to secure that right as it existed at the date of the adoption of the

constitution." (*Christensen v. Hollingsworth*, 6 Idaho 87, 53 Pac. 211, 96 Am. St. 256; *Shields v. Johnson*, 10 Idaho 476, 79 Pac. 391, 3 Ann. Cas. 245; *People v. Burnham*, 35 Idaho 522, 207 Pac. 589.)

The section of the statute now in question (19-2307) provides that

"When a verdict has been rendered against the defendant the court may, upon his application, grant a new trial in the following cases only: . . . .

"3. When the jury has separated without leave of the court after retiring to deliberate upon their verdict, or been guilty of any misconduct by which a fair and due consideration of the case has been prevented."

This statute was originally adopted by the territorial legislature from the California Code (Kerr's Cyc. Code 1920, part II, Penal Code, sec. 1181). This statute has been considered by the supreme court of California in numerous cases, and in *People v. Galloway*, (1927) 202 Cal. 81, 259 Pac. 332, at 336, the supreme court of that state reviewed the authorities at some length and held:

"We think the proper rule is this: That under section 1181, subd. 3, it is within the power of the trial court to grant to an accused a new trial because of misconduct of a juror whether such misconduct consists of failure to disclose a prejudicial mind at the time he is sworn or whether such misconduct arises after he is sworn as a member of the trial jury, subject, of course, to the qualification that such misconduct will not be considered sufficient where the accused has failed to exercise diligence in the premises or has knowledge prior to the verdict of such misconduct; nor will it avail an accused when, from a consideration of the whole case, it can be seen that he has suffered no injury therefrom. In other words, a safe rule applicable to the situation would be that the court would not be warranted in setting aside a verdict on account of such misconduct unless from a review of the entire case it can be seen that the accused has not only been diligent but has suffered an injustice by reason of the action of such juror."

In support of the foregoing conclusion, among other authorities, the court cited Wharton's Crim. Pleading

and Practice (9th ed.) p. 605, sec. 844; Bishop's New Crim. Procedure, sec. 949 b2; 16 C. J., p. 1154; (23 C. J. S., Crim. Law, sec. 1446) 1 Hayne on New Trial and Appeal (rev. ed.), sec. 45.

*People v. Galloway* has been approved and cited in the following cases: *Mast v. Claxton,* 107 Cal. App. 59, 290 Pac. 48, 51; *People v. Young,* 21 Cal. App. 2d 423, 69 Pac. (2d) 203, 205; *Williams v. Bridges,* 140 Cal. App. 537, 35 Pac. (2d) 407, 409; *West Coast Securities Co. v. Kilbourn,* 110 Cal. App. 293, 294 Pac. 57, 58; *In re Malvasi's Estate,* 96 Cal. App. 204, 273 Pac. 1097, 1100. See, also, *Wilson v. Wiggins,* 54 Ariz. 240, 94 Pac. (2d) 870, 872.

It seems to me, as it appears to have appealed to the supreme court of California, that it is "misconduct" of a juror to qualify and participate as a juror in the trial of a felony case, knowing that he is a non-resident in the county and not qualified as a juror to serve. It is quite uniformly conceded by the authorities, that there must be some way of raising the question *after verdict,* where the defendant was not apprised of the situation in time to avail himself of a proper objection to the juror. Both the territory and state legislatures, having said that the *only* grounds for new trial are those defined in the statute (Rev. Stat., sec. 7952, sec. 19-2307, I. C. A.) it must necessarily follow that both the Constitutional Convention and the legislature intended that all such issues, as that presented here, might be presented on motion for new trial.

The question that arises now is whether the irregularity in the selection of the jury or disqualification of the juror Kendall is such as to work a reversal of the judgment. It is not claimed that the juryman was prejudiced or biased against the appellant; nor is any other objection urged against the juror except that he had changed his residence from Bingham county to Bannock county prior to being called as a juror in this case. The verdict against defendant was unanimous and there is nothing in the record from which an inference could be drawn, that the juror improperly, unduly or otherwise influenced the rest of the jurors. There is absolutely

nothing disclosed indicating that appellant has been prejudiced in any manner by the circumstance that one of the jurors happened to be a resident of an adjoining county. As said by this court in *State v. McBride,* 33 Idaho at page 127, 190 P. 247:

"C. S., secs. 9084 and 9191 admonish us to disregard such defects in procedure as are those above mentioned.

Sec. 9084 [19-2719, I. C. A.]: 'After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties.'

Sec. 9191 [19-3602, I. C. A.]: 'Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice in respect to a substantial right.'"

Under such circumstances, I do not think the judgment should be reversed on account of the qualification or lack of qualification of this juror.

I concur in a reversal of the judgment on the grounds stated by Mr. Justice Givens in his concurring opinion.