(No. 7136.  December 22, 1943.)

MIKE KASERIS, Appellant, v. JUSTICE COURT OF THE POCATELLO PRECINCT, BANNOCK COUNTY, IDAHO; and CHARLES HYDE, Justice of the Peace; and ALMA MARLEY, Sheriff of Bannock County, Idaho, Respondents.

[144 Pac. (2d) 469.]

Rehearing denied January 18, 1944.

Jones, Pomeroy & Jones, and B. A. McDevitt for appellant.

C. M. Jeffery for respondents.

BUDGE, J.—The facts in this case are substantially as follows: On or about February 8, 1943, Alma Marley, respondent sheriff of Bannock County, by and through his deputy, procured a search warrant and a criminal complaint against appellant out of the Justice Court of Pocatello Precinct, Bannock County. Pursuant thereto, appellant was arrested in Power County and certain property belonging to the "30 Club" was confiscated by the respondent sheriff of Bannock County. Appellant was taken into Bannock County, and arraigned before Charles Hyde, justice of peace of Pocatello Precinct, Bannock County, in which court bond was fixed, and furnished by appellant. To the criminal complaint, a demurrer was interposed. Thereafter, the prosecuting attorney of Bannock County filed an amended complaint, to which a demurrer was also interposed setting up the ground that the Justice Court of Pocatello Precinct was without jurisdiction of either the person or the offense charged, and that the complaint did not state facts sufficient to constitute a public offense. The demurrer was over-ruled, the case set for trial and appellant filed a petition in the District Court for a writ of prohibition. An alternative writ was issued, which respondents answered. The cause was submitted to Judge Sutphen, district judge of the Fourth Judicial District (to whom the case had been referred by the judges of the Fifth Judicial District), who heard and decided the cause, dissolving the alternative writ and refusing to issue a permanent writ of prohibition. This appeal is prosecuted from "that certain order dated the 26th day of May, 1943,

and filed and entered in the above entitled action on the 1st day of June, 1943, refusing a permanent writ of prohibition, discharging the temporary writ heretofore issued * *."

Appellant assigns and relies upon six assignments of error, in which he urges that the court erred in deciding that the Justice Court of Pocatello Precinct and the respondent sheriff of Bannock County were not acting in excess of their jurisdiction and that the Justice Court had jurisdiction to hear and determine the offense charged in the criminal complaint; that the court erred in holding that appellant could be prosecuted criminally in Bannock County for an alleged offense committed in Power County but within 500 yards of the county line; that the court erred in holding that the temporary writ should be vacated and in denying appellant's application for a permanent writ of prohibition, and in holding that the Justice Court of Pocatello Precinct had jurisdiction beyond the geographical boundaries of Bannock County and in refusing to grant a permanent writ of prohibition enjoining and restraining said Justice Court from proceeding further in the cause.

■ In short, all assignments of error raise but one question, namely, whether or not sec. 19-305, I.C.A., is constitutional. Said section provides:

"When a public offense is committed on the boundary of two or more counties, or within five hundred yards thereof, the jurisdiction is in either county."

Said section was adopted by the Idaho Territorial Legislature in 1864 and has since been incorporated in the laws of the state. It is identical with sec. 782 of the Penal Code of California and has been construed and upheld by the Supreme Court of California in the following cases: *People v. Wooley,* 44 Cal. 494; *People v. Alviso,* 55 Cal. 230; *People v. Velarde,* 59 Cal. 457; *People v. Salorse,* 62 Cal. 139; *People v. Cipolla,* 155 Cal. 224, 100 P. 252; *People v. Padilla,* 86 Cal.A. 95, 260 P. 394. The following courts, in passing upon the jurisdiction of offenses committed within a designated distance of a county line, have held that either county has jurisdiction: *Ryan v. State,* 168 Wis. 14, 168 N.W. 566; *People v. Donaldson,* 243 Mich. 104, 219 N.W. 602; *Bayliss v. People,* 46 Mich. 221, 9 N.W. 257; *State v. Pugsley,* 75 Iowa 742, 38 N.W. 498; *Commonwealth v. Costley,* 118 Mass. 1; *Commonwealth v. Mathews,* 167 Mass. 173, 45

N.E. 92; *Carter v. Barlow*, 105 Iowa 78, 74 N.W. 745; see also 7 Cal. Juris. 911, sec. 57.

In *State v. Lehman*, 130 Ore. 132, 279 P. 283, in the course of that opinion, the following language is used:

"In 16 C.J. it is said: 'While there are some cases to the contrary, the weight of authority is that these statutes do not deprive accused of the constitutional right to a trial by an impartial jury of the county where the offense was committed.'

"In 1 Brill's Cyclopedia of Criminal Law, sec. 290, it is stated: 'Statutory provisions, giving adjoining counties concurrent jurisdiction over offenses committed on or within a certain distance of the county line, are common, and have been upheld in many of the states, although some courts have held that they violate constitutional provisions giving the accused a right to be tried in the county where the offense is committed, in so far as they permit a prosecution in any other county.'

"Authorities contrary to the rule which we have announced may be found in 8 R.C.L., p. 99 * * *.

"It is argued that, if the legislature can extend the jurisdiction one mile from the boundary line of Washington county, its jurisdiction may be extended 20 or 30 miles. It will be time enough to meet that question when it arises. It is sufficient to say that designation by the legislature of the one-mile strip wherein the criminal jurisdiction of the court of Washington county was extended *is not* an unreasonable exercise of legislative discretion.

"Neither do we think that the jurisdiction of the court necessarily depended upon the *uncertainty* of the location of the boundary line between the counties. It was necessary for the state to establish beyond a reasonable doubt that the crime was committed in Washington county as charged in the indictment. If the crime was committed 900 feet from the boundary line, and the place in the light of the statute is not to be considered as being in Washington county, then it logically follows that the court would have no jurisdiction. If, on the other hand, this one-mile strip, for purposes of determining criminal jurisdiction, is to be considered as a part of Washington county, there can be no violation of defendant's constitutional rights.

"We are not unmindful that the courts are much in con-

flict on the question before us. We have deemed it proper, however, to follow those decisions which, in our opinion, tend towards the administration of justice and which do not, like some which have been cited, obstruct it." (Italics ours.)

In *State v. Stewart*, 60 Wis. 587, 19 N.W. 429, that court, construing their sec. 4618, R.S. 1878, which is similar to sec. 19-305, supra, held the statute to be constitutional and not in violation of the constitution which secures to the accused the right to " 'a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed' ". (Art. 1, sec. 7, Idaho Constitution.)

It might be here observed that in the interest of the administration of the criminal laws of the state, officers clothed with such powers should not be condemned but commended in their efforts to suppress crime. The place operated by appellant for the purpose of carrying on the alleged illegal business with which he was charged was advisedly and concededly located within 500 yards of the boundary line between Bannock and Power counties. Pocatello, second largest city in the state, is located within five miles of appellant's building, and the nearest, and small, settlement in Power County, American Falls, is located 20 miles distant from the building.

Moreover, this is not a proper case for the issuance of the temporary writ of prohibition. The grounds for the writ were wholly insufficient to warrant its issuance. A demurrer was filed to the criminal complaint and overruled which raised the question of law here involved. Under such circumstances a writ of prohibition should not issue for the reason that appellant, if convicted would have had a plain, speedy and adequate remedy at law. (Sec. 13-402, I.C.A.; *Thompson v. Adair*, 36 Ida. 790, 214 P. 214; *Cronan v. Dist. Court*, 15 Ida. 184, 96 P. 768.)

The judgment is affirmed with costs to respondents.

AILSHIE, J. (Concurring specially.)—I think the writ was properly denied and that the judgment of the District Court should be affirmed. Furthermore, appellant has a plain, speedy and adequate remedy at law by appeal, in the event he should be convicted. If the appellant is acquit-

ted, he will have no occasion to invoke or deny the further jurisdiction of the court.

It must be conceded that there is some confusion among the cases from this court as to just when the writ of mandate (sec. 13-302) or the writ of prohibition, its counterpart, (sec. 13-401) will issue. The annotations to the foregoing sections fully cover the subject without citation here.

In any event, the writ was properly denied, whether the reason be that the petitioner has a plain, speedy and adequate remedy at law, or that the statute is constitutional and valid.

A very different question would confront us, had the district court granted the writ and the state had appealed. A defendant convicted in a probate or justice court has the right of appeal (sec. 19-4037, I.C.A.) ; whereas, no right of appeal is accorded the state from a judgment of acquittal from the probate or justice court.

In this respect, our statute differs from the corresponding section of the California Code (sec. 1466, Kerr's Penal Code, part II.) There the statute authorizes "either party" to appeal.

GIVENS, J.—I concur in affirming the judgment quashing the writ because appellant had a plain, speedy, and adequate remedy at law by appeal, and the writ should not have issued. (*Pfirman v. Probate Court*, 57 Ida. 304, 64 P. (2d) 849.) Until appropriately and authoritatively held otherwise, a statute is presumed to be constitutional. (*Sanderson v. Salmon River Canal Co.*, 45 Ida. 244, 263 P. 32; *Bannock County v. Citizens B. & T. Co.*, 53 Ida. 159, 22 P. (2d) 674; *Robinson v. Enking*, 58 Ida. 24, 69 P. (2d) 603.)

DUNLAP, J., dissenting.—I think prohibition is available as a remedy to appellant in this case. It will lie to arrest proceedings of any tribunal, corporation, board, or person when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board, or person, (Sec. 13-401, I.C.A.) and may be issued by any court, except Probate or Justice's Court, in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. (Sec. 13-402, I.C.A.)

In the order vacating the temporary writ of prohibition and denying a permanent writ, Judge Sutphen held, among other things, "that the Justice Court of Pocatello Precinct, Bannock County, Idaho, and the sheriff of Bannock County, Idaho, were not acting in excess of their jurisdiction, and that the court had jurisdiction thereof," etc.

In the event of conviction on a criminal charge by a court without jurisdiction the remedy by appeal is not adequate, plain, nor speedy. A defendant should not be required to undergo the inconvenience, expense, and hazard the odium of a conviction, on a criminal charge by a court having no jurisdiction to try him on that charge, and in such case the refusal to grant the writ will amount to a denial of substantial justice.

In the case of *Cronan v. District Court*, 15 Ida. 184, 96 P. 768, this court, after citing with approval from the case of *State v. Superior Court*, 15 Wash. 668; 55 Am. St. Rep., 907; 47 P. 31; 37 L.R.A. 111, expresses itself as follows: "We think the Supreme Court of Washington there correctly states the purpose and office of the writ of prohibition, and that it may be issued to stay the action of an inferior tribunal whenever it is made to appear that it is acting without or in excess of its jurisdiction, on the application of any person shown to be interested in the subject of the litigation."

Apropos to this question, we quote from 42 Am. Jur., p. 156, sec. 18, as follows: "As above stated, the writ of prohibition is one to prevent a tribunal having judicial or quasi-judicial powers from exercising jurisdiction over matters not within its cognizance or exceeding its jurisdiction in matters which are technically within its cognizance. In a broad, general sense the ground for granting the writ are necessarily to be found within the limits of that definition. In the absence, therefore, of constitutional or statutory provisions expanding the scope of the writ, there is one fundamental ground for its issuance; that is, the usurpation of jurisdiction, which, as appears in succeeding sections, may consist of exercising judicial or quasi-judicial functions either where jurisdiction is completely wanting or in excess or abuse of jurisdiction."

The fact that the purpose of this action was to test the constitutionality of a statute likewise does not bar the

remedy here. (42 Am. Jur., p. 168, par. 32; Annotation 113 A.L.R., beginning p. 796.)

I see no difference in the principle involved here with that which was involved in the case of *Thompson v. Adair*, 36 Ida. 791, 214 P. 214, where this court held in effect: That the questions presented were such as might well have been presented by plaintiff on appeal from an adverse judgment against him and that this court will not ordinarily entertain jurisdiction in that class of proceedings, unless the record shows to refuse a writ would amount to a denial of substantial justice. Nevertheless, the court did proceed to determine the issues on the application of the writ there applied for, stating: "However, in view of the fact that an alternative writ has been allowed upon an affidavit which raises a question as to the correct procedure in a criminal case under sections of the statute which are somewhat ambiguous, and which trial courts are frequently called upon to construe, we deem it advisable to determine this case upon merit and indicate our views as to the proper procedure under the sections of the statute involved."

As applied to the facts in this case, I, therefore, am not in accord with the rule announced here by the majority to the effect that this is not a proper case for the issuance of the writ because of plaintiff's remedy by appeal.

Appellant contends that sec. 19-305, I.C.A., was enacted by the legislature in order to avoid miscarriage of justice in those cases where there was doubt as to the situs of the crime, but was not intended to cover cases where there was no doubt as to the situs of the crime, and the county boundary lines are fixed and established; that the application of the statute to the facts in the instant case would deprive defendant, appellant here, of his constitutional right to a jury trial in the county where the offense is alleged to have been committed, in contravention with art. 1, sec. 7 of the Constitution, providing, "The right of trial by jury shall remain inviolate." The statute is also attacked on other constitutional grounds. It is urged that the guaranty of the right of trial by jury secures that right as it existed under the common law at the time of the adoption of our Constitution.

In *State v. Nadlman*, 63 Ida. 153, 118 P. (2d) 58, wherein the appellant was tried in Bingham County for

an offense alleged to have been committed therein, by a jury of the county, except one member who was an elector of Bannock County, this court said: "Appellant's right to trial by jury is the right which is guaranteed to the American people by the sixth amendment to the Constitution of the United States, which was in force in Idaho Territory when our state came into existence, and is the right which art. 1, sec. 7 of our Constitution says 'shall remain inviolate.' The federal constitutional provision which was thus adopted into the Constitution of Idaho, is 'In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law. * * *'

"Appellant is entitled to a trial by a fair and impartial jury composed of members, each of whom is a citizen of the United States and an elector of Bingham county."

Similar statutory provisions of other states have been construed by the courts, and we find decisions both ways, some holding that such a provision vests jurisdiction in the courts of either county, even where the venue is known to the complaining witness, and therefore easily ascertainable by the prosecuting officers. Others taking the view that such a statute, insofar as it authorizes a party to be tried for an offense committed entirely within one county, but a certain specified distance, for instance five hundred yards, from the county line in the adjoining county, is unconstitutional and void.

Cases may occur in which the crime may be committed on the boundary line between two counties, or committed so near the boundary line that the distance therefrom is inappreciable, in which cases, they may, with propriety, be regarded as having been committed in either county, and by such a conclusion, no one is deprived of any constitutional right, but such cases are not analogous to the present case.

Here, it is alleged the offense was committed in Power County, clearly within the jurisdiction thereof, and triable in the courts thereof. Under such facts, we do not think the legislature intended to, or had the power to extend jurisdiction to the Justice Court of an adjoining county.

Justices of the peace are elected in each county (art. 5, sec. 22, Const.); they are required to reside in the precincts for which they are elected or appointed (sec.

1-1402, I.C.A.) ; they must hold court in the precinct from which elected or appointed except where the precinct lies wholly or partially within the limits of an incorporated city or village, in which case they must hold said court at any place within the limits of said incorporated city or village (sec. 1-1401, I.C.A.) ; the civil jurisdiction of justice's courts is quite limited, and confined to their respective precincts or cities (sec. 1-1403, I.C.A.), and the criminal jurisdiction of these courts is confined to certain public offenses committed in their respective counties (sec. 1-1406, I.C.A.).

One charged with a criminal offense is entitled to a jury trial. Juries are selected from the county of the court trying the cause. It is therefore obvious that if the proceedings initiated in Bannock County against appellant here, for an offense alleged to have been committed in Power County, are allowed to proceed, that appellant will be tried by a jury of Bannock County citizens.

This is in conflict to the age-old conception of fundamental right to trial by the jury of the county where the offense is alleged to have been committed, if such trial may be had before a fair and impartial jury.

Mr. Cooley, in his work on constitutional limitations, (8th ed., p. 676) says: "The jury must also be summoned from the vicinage where the crime is supposed to have been committed." In Story on the Constitution, we find, "By the common law, the trial of all crimes is required to be in the county where they are committed. Nay, it originally carried its jealousy still further, and required that the jury should come from the vicinage of the place where the crime was alleged to have been committed." (Story Const., secs. 1769, 1779, 1781, 1791.)

See also *State v. Smith*, (Okla.) 197 P. 712; *Buckrice v. The People*, 110 Ill. 29; *State v. Lowe*, 21 W.Va. 782; 45 Am. Repts. 570, 76 A.L.R. 1038, note III and cases cited.

There can be no doubt that such was the common law right of trial by jury. Our constitution does not define the right of trial by jury, but at the time of its adoption, and in which the constitution of the United States was made a part thereof, the extent, scope and limitations of jury trial were well understood. Our constitution simply provides that such right shall remain inviolate; and this constitutional provision retained the right of trial by a

jury of the county where the offense is committed, to the same extent as though this provision was therein inserted in so many words.

The brief of counsel for respondents in this case cites authorities holding contrary to the opinion herein expressed but I do not consider these authorities as conclusive under the particular facts as appear here. Our attention is called to a like constitutional provision which is involved here and to a like statute of the State of California and to decisions of the California court in relation thereto, holding that either county had jurisdiction. These cases are referred to in the majority opinion and likewise some additional cases from the same court. Respondents point out that the California statutory provision had been thus adjudicated, prior to the adoption of our constitution and under the decisions of our court we are bound to follow these interpretations of the constitutional statutory provisions of the California court.

In *Caldwell v. Thiessen*, 60 Ida. 515, 92 P. (2d) 1047, this court said: "It is axiomatic that a statute adopted from another state will be given the construction and meaning given it by the courts of that state prior to our adoption of it, unless such construction is clearly unreasonable." And in *State v. Taylor*, 59 Ida. 724, 87 P. (2d) 454, we said, "This court, in conformity with the general rule, has held that a statute adopted from another state, is usually but not conclusively, construed in accordance with the decisions of the courts of that state rendered prior to its adoption herein, if their interpretation is reasonable."

However, it does not appear that the constitutionality of the statute in question was squarely presented to the California courts for decision in the cases relied upon by respondents and cited in the majority opinion. A comparison of the facts in those cases with the facts here would serve no useful purpose, and these cases do not determine the constitutionality of the like California statute. Further, I think the construction urged in this case by respondents would be clearly unreasonable, under the facts presented.

This precise question had the careful consideration of the Supreme Court of Oklahoma, in the case of *Smith v. State*, 197 P. 712, and as the holding of the court in that case seems to us reasonable and in conformity with our constitutional safeguards guaranteed to one accused of crime, I quote therefrom, as follows:

"The court is impelled to the conclusion reached by the attorney general. Under sec. 20, of art. 2 of the Constitution, a defendant is entitled to a trial by a fair and impartial jury of the county in which the crime was committed, and, where it is easily ascertainable that the crime is committed in one county, as it was in this case, the prosecution must be instituted in the county where the crime was committed. We think the legislature undoubtedly had authority to provide that, where the public offense is committed on the boundary line of two or more counties, or so close thereto as to make it uncertain in which county it was committed, the jurisdiction would be in either county. This would be a proper safeguard to the state, and would not deprive a defendant of any constitutional right, because in such instances the crime could with propriety be regarded as having been committed in either county, as held by the Supreme Court of Illinois, in the case of *Buckrice v. People*, 110 Ill. 29 supra, but to extend the jurisdiction 500 yards on either side of the county line is clearly an arbitrary and unreasonable act on the part of the legislature, because the surveys of the boundaries of the county are so well known that proof of the venue of an offense is ordinarily easily obtained, and where the offense was not committed on the boundary line of two counties, nor so close thereto as to be doubtful in which county is was committed, the prosecution must be commenced in the county where the undisputed evidence shows the offense was committed. Otherwise, the defendant, by legislative action, could be arbitrarily deprived of the constitutional guaranty afforded him by sec. 20, art. 2, supra. To hold that jurisdiction may be in either county under such provision where the venue is known to the complaining witness, and therefore easily ascertainable by the prosecuting officer before the institution of the prosecution, would in effect grant a change of venue to the state also in contravention of sec. 20, art. 2, supra. For reasons stated, the conclusion is reached that the District Court of Payne County had no jurisdiction of the offense charged against these defendants, and the judgment is reversed, with instructions to the trial court to dismiss the prosecution."

The judgment should be reversed, and the cause remanded for further proceedings, in conformity with this opinion.

Holden, C.J., concurs in this dissent.